## Caleb Chase et al. v. New York Insulated Wire Company and Marshall Field.

1.  LANDLORD AND TENANT—*Tenant's Right to Remove Fixtures.*— A substantial addition to a building made by a tenant for his own use, and which can not be removed without injury to the building, becomes a part of the freehold.    In the absence of an express agreement it can not be removed by the tenant.

**Memorandum.**—Injunction.    Appeal from a decree of the Circuit Court of Cook County ; the Hon. THOMAS B. WINDES, Judge, presiding. Submitted at the October term, 1894.    Affirmed.    Opinion filed January 10, 1895.

### STATEMENT OF THE CASE.

On March 10, 1887, Chase & Sanborn, the defendants, leased of Marshall Field, through his agent and attorney, Henry Dibblee, the building known as 78, 80 and 82 Franklin street, Chicago, for the period of five years, for the purpose of a "wholesale coffee business and coffee roasting." Subsequent to this time, and prior to May 1, 1891, Chase & Sanborn, for the purpose of their business, placed in the second story of the leased building a hanging crib (referred to in the bill of complaint as a "swinging floor"), suspended by iron rods from wooden plates, which plates were screwed to the joists of the floor above, the joists of the hanging floor being loosely set into the brick walls of the building.

The method of construction, as shown by the proof and the defendants' answer, was substantially as follows :

The joists constituting the ceiling of the second story were unplastered and exposed, and about four by fourteen inches in size, and to these were fastened, by means of lag-screws, other joists or plates of pine, two by six inches in size, and running transversely to the permanent joists. These pine plates or joists were screwed on nearly the full width of the building, and were placed about six feet apart, and no portion of them was fastened to the permanent joists except by means of screws.

The screws used were ordinary five-eighths lag-screws, about six inches in length and penetrating the permanent joists about four inches. These transverse plates were then perforated with augur holes at intervals of five or six feet, and through these holes were put iron rods, fastened above the plates by a nut and washer, and running down the length of six or seven feet, there being in all about fifty of these rods, which were about three-fourths of an inch in diameter, and from their lower ends was suspended the swinging floor in controversy, by means of holes perforating the joists thereof and nuts fastened thereunder.

The joists last referred to did not touch the building or its walls at any point excepting at the two ends, but were supported almost wholly by means of the iron rods above described.

Upon these joists were placed the boards constituting the floor. At each end of each lower joist there was a cut space into the wall to the depth of about one brick, or four inches, and about six by eight inches square, to admit the ends of the joists. The brick walls thus cut into were very strong walls, not less than twenty inches thick. These beams or joists were fastened into the wall and the structure was capable of being taken down by simply unscrewing the nuts at the ends of the rods.

It appears that Chase & Sanborn applied to Dibblee, the agent of Marshall Field, to have a hole cut through the elevator shaft, which would enable them to unload teas and

coffees from the elevator, upon this structure. This per-
mission was granted, and the hanging crib, or shelf, which
was then in place, was added to, from time to time, until
practically the whole space of the second story had been
utilized in this way.

On May 1, 1891, Chase & Sanborn sublet the second floor
of this building to the New York Insulated Wire Company,
for a term of one year, " with the appurtenances," the lease
to expire April 30, 1892, by which lease the wire company
especially covenanted and agreed " to yield up the said
premises to the said party of the first part (Chase & San-
born), at the expiration of the time in this lease mentioned,
in as good condition as when the same were entered upon
by the said party of the second part," etc. The lease from
Marshall Field to Chase & Sanborn gave the lessees permis-
sion to sublet.

Early in April, 1892, Chase & Sanborn, by their manager,
Mr. Moseley, suggested to the New York Insulated Wire
Company their desire to remove the hanging crib before the
expiration of their lease, and on April 16, 1892, Mr. Moseley
wrote them a letter asking them to decide by the 20th inst.,
whether they desired to buy the crib at a fair valuation.
This letter suggested that if they did not decide to buy it,
that Chase & Sanborn wished to have the remaining ten
days of their lease to remove it from the building.

On April 26th, no decision having been arrived at, Chase
& Sanborn gave notice in writing to the wire company, and
also to Marshall Field, through his agent, that they would
commence to take away the crib on the morning of the 29th
of April.

The wire company replied to this notice, also in writing,
referring Chase & Sanborn to Marshall Field, and saying
that they had nothing to do with the matter.

On April 28, 1892, the wire company filed in the Circuit
Court a bill praying for an injunction commanding the de-
fendants thereto to refrain " from entering upon the prem-
ises now occupied by the complainant, or from seizing or
attempting to seize, or take possession of the same, or any
portion thereof, or from removing or attempting to remove

or take possession of the swinging floor or ceiling in the premises, Nos. 78, 80 and 82 South Franklin street, in the city of Chicago, and from all interference with the complainant in the possession and peaceable enjoyment of said premises, and the appurtenances thereto belonging."

Upon this bill an injunction was issued, as prayed in the bill, and a writ served on Carelton Moseley, manager for Chase & Sanborn, on the morning of April 29, 1892.

The defendants appeared and filed their answer to this bill. Subsequently, and by stipulation, Marshall Field was made a party to the suit and allowed to file a cross-bill, in which he sets up, substantially, the same facts as in the original bill, and prays for the same relief against these defendants. The cause having been referred to a master to take proof and report his conclusions, the master filed his report, in which he found, among other things, that "the real question involved is whether the floor became a fixture, a part of the freehold, or whether it was so built, and so intended to be built, that the lessees, Chase & Sanborn, are entitled to remove it."

Upon this question the master found as follows:

"After considering all the evidence in the case, I am of the opinion that the floor constructed must be considered as a fixture, and attached to the freehold, and that the lessees, Chase & Sanborn, were not entitled to remove it."

On exceptions to this report of the master, the Circuit Court confirmed the report and approved the same in all things.

It is from this decree of the Circuit Court that this appeal is prosecuted.

APPELLANTS' BRIEF, FRANK L. WEAN, ATTORNEY.

Appellants contended that the swinging floor was a trade fixture, placed in the building by the appellants, as tenants of Marshall Field, for the purposes of their business, and was properly removable by them as tenants, as against Marshall Field, the landlord, either before or at the expiration of their lease. Hanrahan v. O'Reilly, 102 Mass. 201; Whiting v. Brastow, 4 Pick. (Mass.) 310; Ewing on Fixtures,

99; 2 Kent Com., 343; Moore v. Wood, 12 Abb. Pr. (N. Y.) 393; Kelsey v. Durkee, 33 Barb. (N. Y.) 440; Seeger v. Pettit, 77 Pa. St. 437; Capen v. Peckham, 35 Conn. 94; Moore v. Smith, 24 Ill. 512; Van Ness v. Pacard, 2 Pet. (U. S.) 137; Berger v. Hoerner, 36 Ill. App. 360.

The rule that the tenant must remove fixtures, if at all, before he quits possession, had its foundation in the presumption of abandonment arising from the conduct of the tenant in quitting the premises and leaving his fixtures behind him. 2 Taylor, Landlord and Tenant, Sec. 551.

The authorities establish the reasonable doctrine that when the landlord interposes to prevent the removal of the fixtures at the end of the term, by the service of an injunction, or the like, he will not be allowed to take advantage of his own wrong, and will be required to permit the tenant to re-enter the premises for the purpose of taking away his fixtures within a reasonable time after the obstacle has been removed.    Tyler on Fixtures, 454; Mason v. Fenn, 13 Ill. 252.

APPELLEES' BRIEF, O. M. SMITH, ATTORNEY.

The right of a tenant to receive payment from the landlord, at the expiration of the tenancy, for fixtures placed on the demised premises during the term of the lease arises from no rule of law or legal duty growing out of relations of landlord and tenant.    It is always a matter of express contract, and in the absence of such contract, the fixtures at the expiration of the term, become, by operation of law, the property of the landlord.

We have, then, to look solely to the terms of the contract in the lease to determine the rights of the parties in this case.    Gardner v. Watson, 18 Brad. 396.

In order that fixtures of a cigar stand in a hotel may retain their character of removable trade fixtures in case of successive occupancies of the same, as well as of the building itself, it is necessary, upon the expiration of each tenancy of the house, that such right be duly asserted.    Leman v. Best, 30 Ill. App. 324.

If the party making an improvement, as between himself and the owner of the soil, had no right to erect the same as property separate and distinct from the freehold, an intention to do so, no matter how clearly manifested, is of no avail. Ogden v. Stock, 34 Ill. 527.

Mr. Presiding Justice Waterman delivered the opinion of the Court.

We think it clearly appears that the removal of this floor would not leave the building in as good a condition as it was before it was constructed. The preponderance of the evidence is to that effect.

A substantial cutting into the brick supporting walls of the building was made by appellants, and while it may be the case that the wall would be and is amply strong in the absence of the brick removed by appellants, we do not think that as to a material interference with supporting walls the court is bound to consider nicely as to whether the walls are not yet "as strong as ever," or as good as if a portion of them had not been cut away.

It has not been made to appear that appellants had any right to, as they did, without the knowledge of the owner of the building, construct this additional floor.

For these reasons and upon the authority of Ogden v. Stock, 34 Ill. 522; Spring v. Barbe, 43 Ill. App. 585; Taylor on Landlord and Tenant, Sec. 547, and Leman v. Best, 30 Ill. App. 323, the decree of the Circuit Court is affirmed.