THOMAS FITZPATRICK and Another v. CASPER ERNST and Others.[1]

September 27, 1907.

Nos. 15,111—(86).

**Mechanic's Lien.**

Plaintiffs agreed with the owner of a building in 1902 to make all the improvements, alterations, and repairs which the owner of the building would need in the future at the regular price of work and material, with ten per cent. added thereto. From time to time between September, 1902, and September, 1903, work was ordered and performed. A bill was presented at the end of the first contract, and afterward about monthly. On November 14, 1903, plaintiffs filed the statutory statement to secure a mechanic's lien. In September, 1903, defendant became the owner of the building under foreclosure of a mortgage. It is *held* that plaintiffs could recover on their lien such portions of the work only as had been done within ninety days next prior to its filing.

Action in the district court for Ramsey county to foreclose a mechanic's lien. The case was tried before Olin B. Lewis, J., who found that plaintiffs were entitled to a lien in the sum of $109 and ordered a sale of the premises to satisfy the lien. From an order denying a motion to amend the findings, and for judgment notwithstanding the findings, or for a new trial, plaintiffs appealed. Affirmed.

*C. D. & R. D. O'Brien,* for appellants.

*John F. Fitzpatrick,* for respondent.

JAGGARD, J.

This is an action to foreclose a mechanic's lien. The plaintiffs claim a lien for labor and materials supplied to Casper Ernst for re-

[1] Reported in 113 N. W. 4.

pairs and changes on the Ernst Building, an eight-story office building. Ernst, the owner of the premises during the time the materials and labor were supplied, on September 16, 1903, mortgaged them to the defendant, George Meyer, to secure the sum of $22,000. Meyer had no actual knowledge nor notice of any claim of the plaintiffs when he took his mortgage. The title afterward passed to him by foreclosure. The premises were also subject to other mortgages. The court below ordered judgment for a lien in favor of the plaintiffs for $109, being the amount of all jobs finished within ninety days of the time of filing the lien statement in the register of deeds' office. From an order denying plaintiffs' motion for judgment and for a new trial, and to amend the findings, this appeal was taken.

The essential question presented by the assignments of error is whether the items of labor and material furnished by the plaintiffs and appellants to the defendant Ernst between September 8, 1902, and September 19, 1903, were furnished under one continuing contract, or under distinct and separate contracts.

The testimony of one of the plaintiffs determines this controversy. From an examination of the direct and cross-examination of this witness, we conclude that the trial court was justified in finding, in effect, that the work consisted of a number of independent jobs, and not one entire contract. The plaintiffs agreed to make "all improvements and repairs and alterations that he (the owner of the building) would want in the future" "at the regular price, the net price, adding ten per cent. to the regular price of day's work, and ordinary pay for material." From time to time, when work was ordered, it was performed. A bill was presented at the end of the first contract, and afterward, and before the filing of the lien, about monthly. Each contract was based upon a specific order for particular work. Each performance was individual. The only thing agreed upon was the price to be paid. Price alone cannot make a contract. This was not an agreement for the "performance of the whole work," in the sense in which that phrase is currently used in connection with building contracts. Under this agreement work might or might not have been ordered. Obligation was imposed only as to work specifically ordered at a particular time. Upon the ordinary building contract the builder undertakes to construct or repair a particular improvement. He is under obligation so

to do, and the owner to pay him the agreed or reasonable compensation therefor. In effect here was a series of contracts at an agreed price.

Considerations of inconvenience necessitate the conclusion thus reached. While a building is in progress of erection or repair a party dealing with the building by way of mortgage or other incumbrance or purchase is given notice, actual or constructive, of the possible existence of a claim for mechanic's lien. Under such a contract as the one at bar there is no reason for attributing constructive notice. Any other view would result in confusion and uncertainty most lamentable. No actual notice of the contract was shown. It follows that, whatever might have been the rights of the plaintiffs as against the owner of the building, they could assert no rights under a mechanic's lien filed in November, 1904, as against the defendant, who became the owner of the property in September, 1903.

Plaintiffs argue, however, that in any event they believed that they were doing the work under one contract, that they had reason so to believe, and that therefore they were entitled to the lien claimed for the work actually done and the materials actually furnished.

In support of this conclusion counsel cites especially John Paul Lumber Co. v. Hormel, 61 Minn. 303, 63 N. W. 718. That case is authority for the position that the vendor, who had furnished materials used in the construction and repair of premises described in the lien statement, and who subsequently furnished other material to the same vendee, in the justifiable belief that it was for the same improvement, which was, however, in fact used on different premises, was entitled to his lien as to the later material. There the vendor had performed all that the law required him to do as condition precedent to the right to claim a mechanic's lien. The mistake or wrong was on the part of the vendee, and occurred subsequently. The contract under which the lien was claimed was entirely consistent with the right to assert it. Neither the letter nor the spirit of this decision would entitle plaintiffs to recover here. If they were entitled to a series of liens on a series of contracts, although the charges to be made were predetermined, then that they honestly believed that they were entitled to one lien for one contract was a mere mistake of law on their part. The insufficiency of their claim appeared at its very beginning. It

did not concern the delivery of material or the rendering of services. It was not due to the mistake or wrong on the part of the vendee. It arose from the fact that one absolute essential of a mechanic's lien was wanting, viz., a contract consistent with the rights of the lien here asserted. The present contract was inconsistent with that right.

The rule in this connection is well stated by Spencer, J., in Hazard v. Loomis, 2 Disn. (Ohio) 544, 551, to which we are especially referred by plaintiffs: "Where work, distinct in its nature, is performed at different times, the law supposes it performed under distinct engagements, as where the work at one time is for building and at another for repairing. So, where two distinct contracts are in fact made, as distinct contracts for different parts of the work, the work done under each contract must be considered as entire of itself. But when the work, etc., is done or furnished, all going to the same general purpose, as the building of a house, or any of its parts, though such work, etc., be ordered and done at different times, yet if the several parts form an entire whole, or are so connected together as to show that the parties had it in contemplation that the whole should form but one, and not distinct matters of settlement, the whole account must be treated as a unit, or as being but a single contract." That case involved one undertaking—which was construed to "constitute but one job" (page 552), to erect a house, which naturally put persons dealing on the credit of the premises on guard—and one settlement. The case at bar involves a number of distinct jobs, which we have held to constitute separate contracts, to make repairs, which were, in large measure, beyond the possible contemplation of the parties when the arrangement was made, and which were not naturally likely to give notice of possible liens and accounts rendered approximately every month. Logically, and within the reasoning of the Ohio case, taken as a whole, it falls within the first or second class of cases, and not within the third class of cases described.

This conclusion renders it unnecessary to consider the other cases cited by counsel in detail. They are all readily distinguishable. It would uselessly incumber the record to discuss them at length.

Affirmed.