# NORTHWESTERN LUMBER & WRECKING COMPANY v. ELIZABETH F. PARKER.[1]

March 6, 1914.

Nos. 18,441—(274).

**Mechanic's lien upon freehold — fixture.**

1. A two story and basement building was leased to one tenant, the first story and basement for manufacturing purposes, and the second story for

[1] Reported in 145 N. W. 964.

Note.—On the question of agreement between landlord and tenant as to removal of fixtures and improvements by latter as affecting third person claiming a mechanics' lien, see note in 45 L.R.A.(N.S.) 100. And as to the right of a tenant to remove improvements as affecting lien on the property improved, see note in 41 L.R.A.(N.S.) 298.

living apartments. At the instance of the tenant a lien claimant furnished the labor and part of the material for installing a combination steam heating and power plant in the building. If the plant was a fixture in the legal sense, the freehold is lienable; if it was removable, the freehold is not lienable.

**Fixtures.**

2. Where a controversy arises between vendor and vendee or mortgagor and mortgagee, all articles originally personalty which have been actually or constructively attached, are fixtures and part of the freehold.

**Same — evidence.**

3. When the question arises between landlord and tenant, articles, ordinarily fixtures, if attached by a tenant for trade purposes, may be removed during the tenancy, so long as such removal does not result in material and permanent injury to the freehold. In no case can the tenant remove fixtures if they are permanent in their nature and if their removal will leave the freehold in a substantially worse plight than before the annexation was made. The evidence sustains the finding of the trial court that this plant became part of the land.

**Chattel mortgage.**

4. A tenant, with the assent of the landlord, gave a chattel mortgage on articles attached to the realty. The effect of this was to make these articles personal property as between these parties, but the rights of persons performing labor in annexing such articles to the freehold without knowledge of such contract could not be affected thereby.

**Repairs — lien for same.**

5. Painting a building inside and out, papering, painting and kalsomining inside, and putting on a section of new roof, to fit premises for occupancy by a tenant, are not "repairs," within a statute which provides that, against a lessor, no lien is given for repairs made by or at the instance of his lessee.

**Lien statement.**

6. Where work done under several contracts is practically continuous and constitutes one job, only one lien statement need be filed.

**Contract price evidence of value.**

7. The contract price as agreed upon between a lien claimant and the party ordering the work is *prima facie* evidence of its value as against the owner.

**Finding sustained by evidence.**

8. The evidence sustains the finding of the trial court that the owner of the premises authorized these improvements.

Action in the district court for Hennepin county against Elizabeth F. Parker, C. C. Whitney, C. C. Whitney Pure Food Co., H. O. Roberts Co., Gardner Hardware Co., and W. S. Nott Co. to recover $92.87, and to foreclose a mechanic's lien therefor upon the premises described in the complaint. The action was tried before Steele, J., who made findings and ordered judgment in favor of the trustee in bankruptcy of defendant H. O. Roberts Co., and defendant Gardner Hardware Co., and ordered the sale of the premises for the payment of the respective judgments, the remainder of the proceeds after expenses of sale to be paid to defendant Parker. The motion of defendant Parker for a new trial was denied. From the order denying her motion for a new trial, defendant Parker appealed. Affirmed.

*Mead & Bryngelson,* for appellant.

*Wright & Matchan* and *John A. Sweeney,* for respondents.

HALLAM, J.

1. Defendant Parker owned a two story and basement building. She leased the first floor and the basement to the C. C. Whitney Pure Food Co. for five years, with an option of purchase. The lease provided that the building was to be used for manufacturing purposes and that the lessee should "make all necessary changes or repairs at his own expense." Some time later she leased the second floor to the Whitney Co. This floor was fitted up for living apartments. This lease was never signed, but the Whitney Co. took possession.

The Whitney Co. made some improvements, as a result of which two mechanic's liens were filed. This action is to foreclose these liens. They will be separately considered.

### THE ROBERTS' LIEN.

The Whitney Co. purchased an engine, boiler, and some steam radiators and other appliances, and contracted with H. O. Roberts Co. to do the work and furnish such other material as might be necessary in order to install a combined steam heating and power plant. The plant as installed consisted of the following: A boiler in the basement set upon a foundation of brick, stone, and cement or mortar,

prepared for the purpose; a steel smoke stack just outside of the wall of the building set on a separate cement foundation built for the purpose; a smoke pipe connecting the boiler with the stack and passing through an opening made for the purpose in the stone foundation wall; an engine for power for manufacturing purposes, situated on the first floor, bolted to an engine bed on the floor; the engine bed supported by posts set in the basement; coil radiators in the basement; the usual steam radiators on the first and second floors, connected with the boiler with the usual piping, screwed, flanged to the boiler and screwed to the radiators, the pipes in the basement being also nailed or screwed to floor joists. Holes were made in the floor for the passage of pipes from one floor to another. There were the usual elbows, couplings, valves, traps and fittings incident to a steam heating plant.

Defendant Parker contends that this heating and power plant was personal property and that the real estate was not lienable therefor. The statute gives a lien upon real estate in favor of any person who contributes to the improvement of the real estate by performing labor or furnishing material for the erection or alteration of any building or fixture thereon. G. S. 1913, § 7020. If, as the claimant contends, this plant was a fixture in the legal sense of that word, the freehold is lienable; if, as the owner contends, the plant was removable property, the freehold was not lienable. White Enamel Refrigerator Co. v. Kruse, 121 Minn. 479, 140 N. W. 114. The trial court found in favor of the claimant. The question is, is this decision sustained by the evidence?

2. The general principles applicable to the laws of fixtures are now pretty well established. In determining whether an article, originally personal property, has become a fixture, that is, a part of the freehold, several things must be considered, namely, the fact and character of the annexation, the nature of the thing annexed and its adaptability to the use of the land, the intent of the parties concerned, and the relation to the freehold of the party making the annexation. Wolford v. Baxter, 33 Minn. 12, 17, 21 N. W. 744, 53 Am. Rep. 1. The relation of the parties is sometimes of decisive importance. Where the question arises between vendor and vendee or mortgagor

and mortgagee, the rule is, that articles physically or constructively attached to the freehold are real estate. Such articles are constructively attached when they bear such relation to the structure as to constitute in ordinary understanding a component part of the structure itself. Wolford v. Baxter, 33 Minn. 12, 21 N. W. 744, 53 Am. Rep. 1; Farmers' L. & T. Co. v. Minneapolis E. & M. Works, 35 Minn. 543, 29 N. W. 349. There is no doubt that if this case had arisen between a vendor and vendee, or between a mortgagor and mortgagee, this plant must have been held a fixture. It was substantially attached to the freehold.

3. When the question arises between landlord and tenant, different considerations enter into the case. Modern decisions have ingrafted on the law of fixtures an exception, due to the growing necessities of trade, that certain articles ordinarily fixtures, attached by a tenant for trade purposes, may be removed during the tenancy. Such articles are known as "trade fixtures." McAdam, Landlord & Tenant, § 219; Cook v. Champlain Transportation Co. 1 Denio (N. Y.) 91. If an article has acquired the character of a "trade fixture," the later cases hold that it is removable by the tenant, no matter how firmly attached, so long as such removal does not result in material and permanent injury to the freehold. Hanrahan v. O'Reilly, 102 Mass. 201; Bergh v. Herring-Hall-Marvin Safe Co. 136 Fed. 368, 69 C. C. A. 212, 70 L.R.A. 756; Friedlander v. Ryder, 30 Neb. 783, 47 N. W. 83, 9 L.R.A. 700. In Wiggins Ferry Co. v. Ohio & M. Ry. Co. 142 U. S. 396, 416, 12 Sup. Ct. 188, 35 L. ed. 1055, it was said: "Indeed it is difficult to conceive that any fixture, however solid, permanent and closely attached to the realty, placed there for the mere purposes of trade, may not be removed at the end of the term."

This right of removal does not extend to every article annexed by a tenant during his tenancy. It is generally held that the right extends only to articles annexed for the purpose of the trade, domestic convenience or ornament, or agricultural purposes. Tiffany, Landlord & Tenant, § 240. Some cases, however, carry the doctrine still further and permit removal by the tenant of all fixtures installed by him for the more beneficial enjoyment of the premises during the

tenancy. Bircher v. Parker, 40 Mo. 118; State v. Whitener, 93 N. C. 590; Kerr v. Kingsbury, 39 Mich. 150, 33 Am. Rep. 362; Hedderich v. Smith, 103 Ind. 203, 2 N. E. 315, 53 Am. Rep. 509. It is not necessary to determine the precise limitation upon the right of removal. Certain it is that in no case can the tenant remove fixtures, no matter what the purpose for which they were installed, if they are permanent in their nature and if their removal will leave the freehold in a substantially worse plight than before the annexation was made. Whiting v. Brastow, 4 Pick. (Mass.) 310; Chase v. New York Insulated Wire Co. 57 Ill. App. 205, 210; Allen v. Kennedy, 40 Ind. 142; Collamore v. Gillis, 149 Mass. 578, 22 N. E. 46, 5 L.R.A. 150, 14 Am. St. 460; Ombony v. Jones, 19 N. Y. 234; Martin v. Roe, 7 El. & B. (Eng.) 237; Davis v. Jones, 2 Barn. & Ald. (Eng.) 165; Ewell, Fixtures, * 92; Tiffany, Landlord & Tenant, § 240.

The trial court found that the heating and power plant "was so connected as to make the same and all thereof a part of the land and premises." The finding is sustained by the evidence. Taking this steam heating and power plant as a whole, the court might fairly find that its nature, its mode of annexation, and its purpose and use, were such as to place it within the class of permanent improvements, and that its removal could not be effected without substantial impairment of the freehold. Pond & Hasey Co. v. O'Connor, 70 Minn. 266, 73 N. W. 159, 248.

4. It appears that the engine, boiler, and some of the radiator pipes and machinery above mentioned, were purchased by the Whitney Co. of the Manufacturers' Supply Co.; that a chattel mortgage was given thereon to secure part of the purchase price; and that defendant Parker, by an instrument in writing, empowered and authorized the Manufacturers' Supply Co. to enter said building and remove said property in the event the Whitney Co. did not pay said mortgage, "whether said property has become attached to or a part of said building or not." This chattel mortgage and this agreement clearly conferred upon all such articles the attributes of personal property as between the parties thereto, for articles otherwise fixtures may be converted into chattels by agreement of the parties concerned.

N. W. Mut. Life Ins. Co. v. George, 77 Minn. 319, 79 N. W. 1028, 1064; Merchants Nat. Bank v. Stanton, 55 Minn. 211, 56 N. W. 821, 43 Am. St. 491; Little v. Willford, 31 Minn. 173, 17 N. W. 282; Stout v. Stoppel, 30 Minn. 56, 14 N. W. 268; Case Mnfg. Co. v. Garven, 45 Oh. St. 289, 13 N. E. 493. It is equally clear, however, that these transactions could not change the character of these annexations so far as the Roberts Co. was concerned, nor affect the rights of that company in any way, unless that company had knowledge that such agreements had been made. The evidence makes it clear that the Roberts Co. had no such knowledge.

### GARDNER HARDWARE COMPANY'S LIEN.

5. This lien is based upon labor and material furnished by one Colgrove in painting and papering portions of the building. It appears that in fitting up this building some carpenter work had been done, for there was "old" and "new" work to be painted. The work done by Colgrove consisted of painting, staining, or varnishing woodwork, both old and new, papering, painting or kalsomining of walls, painting or varnishing of floors, bronzing radiators and pipes, painting the outside front of the building, and putting on a portion of new roof. Altogether the work appears to have covered a thorough renovation of the whole building.

The statute provides "that as against a lessor no lien is given for repairs made by or at the instance of his lessee." G. S. 1913, § 7024. It is contended that the work done by Colgrove was merely "repairs" and hence not lienable under this section. The trial court found otherwise, and we sustain this finding. It is doubtless true that painting and papering done by a tenant at recurring periods during his tenancy properly come under the denomination of repairs. But painting and papering of the character done here, as part of a general plan of fitting up the premises for the initial occupancy of the tenant, are properly classed as improvements, and not repairs.

We have no difficulty in holding that a section of new roof put on to enable the tenant to enter into occupancy of the premises, is properly an "improvement" and not "repairs."

6. This work was done under several little contracts, each for some

125 M.—8.

small part of the work. One lien statement was filed covering all the contracts. The whole work was part of one general improvement, or one job, and was practically continuous in point of time. Only one lien statement was required. This is well settled. See American Bridge Co. v. Honstain, 120 Minn. 329, 139 N. W. 619. Nothing need be added to what is there said on this subject. The case is clearly distinguishable from Fitzpatrick v. Ernst, 102 Minn. 195, 113 N. W. 4.

7. There was no direct evidence of the value of this work. The lien claimant can sustain a lien, as against an owner with whom he has no contract, for only the reasonable value of his work. It appears, however, that the contracts in each case fixed the price. The contract price of work, as agreed upon between the lien claimant and the party ordering it, is *prima facie* evidence of its value as against the owner. Leeds v. Little, 42 Minn. 414, 416, 44 N. W. 309. This *prima facie* evidence was subject to rebuttal, but it was not rebutted.

8. G. S. 1913, § 7024, provides that when improvements are made by one person upon the land of another, the owner shall be deemed to have authorized such improvements in so far as to subject his interest to liens therefor, but that any person who has not authorized the same may protect his interest from such lien by serving upon the person contributing to the improvement, within five days after knowledge thereof, written notice that the improvement is not made at his instance, or by posting like notice in a conspicuous place on the premises. The trial court found that these improvements were made with the knowledge of the owner, and that no such notice was given. No useful purpose would be served by reciting the conflicting evidence on this subject. We hold that these findings are sustained by the evidence.

Order and judgment affirmed.