## THE VILLAUME BOX & LUMBER COMPANY v. MONA CONDON AND ANOTHER.[1]

June 18, 1920.

No. 21,745.

**Mechanic's lien — storm sash, not furnished under original contract, did not save lien.**

The uncontradicted evidence shows that a contractor completed a house and the owner accepted and took possession of it more than 90 days before a materialman filed his lien statement. *Held*: That storm sash, furnished for a sun porch after the owner accepted the house and less than 90 days before the statement was filed, were not furnished to accomplish the general purpose of the original contract between the owner and the contractor, but under a new and independent contract to add something to the house not contemplated while it was under construction or before it was completed and accepted, and that the time for filing a lien was not extended by the furnishing of such sash. Heimbach Lumber Co. v. Spear, 140 Minn. 276, distinguished.

Action in the district court for Ramsey county to foreclose a mechanic's lien. The case was tried before Olin B. Lewis, J., who made findings and ordered judgment in favor of plaintiff for the amount demanded, and for a sale of the premises for the satisfaction of the judgment. From an order denying their motion to amend the findings and conclusions or for a new trial, defendants appealed. Reversed.

*Edward A. Knapp* and *O'Brien, Young, Stone & Horn,* for appellants.
*Butler, Mitchell & Doherty,* for respondent.

LEES, C.

This is an appeal from an order denying defendants a new trial of an action to foreclose a mechanic's lien. Two questions are presented: The first is whether certain storm sash were furnished under the original contract for the construction of a dwelling house or under a new and independent contract; and the second concerns the application of payments.

[1]Reported in 178 N. W. 492.

1. The uncontradicted testimony of both defendants is that the house was fully completed prior to September 5, 1918, and that on that day Mrs. Condon moved into and accepted it. The contract provided for the payment of $1,500 when the house was completed and accepted and for final payment 60 days after acceptance. The $1,500 payment was made on September 11. In the latter part of October Mrs. Condon decided to put double windows on a sun porch which was part of her house. She asked Elmer to get them and put them up. On October 28 he ordered them from plaintiff, stating that they were for Mrs. Condon's house and were extras. They were furnished on November 5 and charged to Elmer. Plaintiff filed its lien statement December 31, 1918. When Elmer made the contract with Mrs Condon, he took the specifications for mill work to plaintiff and it made a price of $2,400 for all the mill work specified. The specifications provided that there should be no storm sash on windows in the sun porch, but called for storm sash on all other windows. Some extras were furnished by plaintiff, the last item on August 29, 1918. Nothing was furnished thereafter until the item of November 5. The storm sash for the sun porch were charged as an extra with the earlier items.

When the owner determines to add something to the building after its construction has been completed and it has been delivered and accepted, materials furnished to the contractor to make the addition and not to accomplish the general purpose of the original contract are considered to be furnished under a new and independent contract. Frankoviz v. Smith, 34 Minn. 403, 26 N. W. 225; Fitzpatrick v. Ernst, 102 Minn. 195, 113 N. W. 4; N. W. L. & W. Co. v. Parker, 118 Minn. 211, 136 N. W. 855; Paine & Nixon Co. v. Dahlvick, 136 Minn. 57, 161 N. W. 257.

Plaintiff relies on Heimbach Lumber Co. v. Spear, 140 Minn. 276, 167 N. W. 1041, contending that it is decisive of the question now under consideration. We are unable to agree with counsel that it is. It appears from the record in that case that the contractor testified that he had finished the job when the owner moved in, except for the door referred to in the opinion; that the house was not finally accepted and he did not get a final settlement with the owner until some time

after the door was finished. The owner testified that he had practically accepted the house before he made the final payment, but wanted to get an account from the contractor before he made an adjustment with him. In the case at bar, both the contractor and the owner testified positively and unequivocally that nothing remained to be done on the house when the latter moved into it, and there is nothing in the record to controvert their testimony.

John Paul Lumber Co. v. Hormel, 61 Minn. 303, 63 N. W. 718, is not in point, for the reason that the storm sash were not furnished by plaintiff to Mrs. Condon or her agent or servant, or charged to her account.

That the original contract between Elmer and Mrs. Condon was fully performed prior to September 5 cannot be disputed. Mrs. Condon testified that nearly two months later she decided to make the sun porch more a part of her house than an outside porch and to furnish it differently. This was an afterthought. The storm sash were furnished for a purpose not contemplated while the house was under construction or before it was accepted, and the time for filing the lien statement to preserve the lien for the materials originally furnished was not extended by furnishing them under the circumstances above stated. Elmer was not Mrs. Condon's agent to order them, but an independent contractor. Plaintiff may have relied upon his statement that the storm sash were extras for her house, but its officers had seen the specifications and were chargeable with notice that these sash were not included in the original contract. As was remarked in Lundell v. Ahlman, 53 Minn. 57, 54 N. W. 936, storm sash are a proper part of a well constructed house in this climate, and, if they were delivered to construct and complete Mrs. Condon's house under circumstances similar to those in the case cited, they might properly be held to belong in the same account with the other materials furnished by plaintiff.

But here there was no express agreement that plaintiff should furnish any mill work not included in the specifications. Such an agreement may be implied from circumstances, Coughlan v. Longini, 77 Minn. 514, 80 N. W. 695, but not under the circumstances disclosed by the record. As the record stands, we are unable to find sufficient evidence

to support the finding that the storm sash were furnished in conformity with and in fulfilment of the original contract for the construction of the house, and hence the court erred in denying defendants' motion for a new trial.

2. Since there must be a new trial decision of the second question presented is not necessary.

We note that Mrs. Condon's answer consists of a general denial and an allegation that she has paid Elmer in full for everything furnished for the construction of her house. Elmer's answer alleges that he has paid plaintiff for all the materials it furnished for the construction of the house, except the storm sash on the sun porch, and that they were furnished under a new and independent agreement made after the house was completed and accepted. It is nowhere alleged that Elmer directed plaintiff to apply his payments upon a particular account, or that the payments were made with money received from Mrs. Condon, or that plaintiff had any knowledge as to the source from which the money was obtained, but, by the apparent consent of both parties, considerable evidence was received bearing upon these questions. The court has made no findings respecting them. The evidence is conflicting and would support a finding in favor of the contention of either party. We think that, notwithstanding the state of the pleadings, the conduct of the trial resulted in issues being raised and litigated by consent which should have been covered by the findings. The briefs contain an extended discussion of the law relating to the questions above referred to. In the absence of findings, we are not called upon to state the rules of law which may be applicable. For an abstract statement of them see Jefferson v. Church of St. Matthew, 41 Minn. 392, 43 N. W. 74, followed in Miller v. Shepard, 50 Minn. 268, 52 N. W. 894, and American Bridge Co. v. Honstain, 113 Minn. 16, 128 N. W. 1014, and for a review of the conflicting decisions see Sioux City F. & Mnfg. Co. v. Merten, 174 Iowa, 332, 156 N. W. 367, L.R.A. 1916D, 1247-1254.

The order denying a new trial is reversed and a new trial granted.