# ROCHESTER'S SUBURBAN LUMBER COMPANY v. CHARLES H. SLOCUMB AND OTHERS.

163 N. W. (2d) 303.

December 6, 1968—No. 41163.

*Brown & Bins*, for appellant.

*O'Brien, Ehrick, Wolf & Deaner* and *Michael Berens,* for respondents Slocumb.

Heard before Knutson, C. J., and Nelson, Murphy, Peterson, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

This is an appeal from a judgment for defendants in a mechanics lien foreclosure action. In 1964 defendants Charles H. Slocumb and Mary C. Slocumb engaged the services of an architect to design a house. They selected building contractor Thornton G. Egner of Rochester, Minnesota, then doing business as Four Star Builders, to build the house.

Plaintiff, Rochester Suburban Lumber Company, was at the time engaged in retailing lumber and building materials. The contractor, Egner, began ordering lumber supplies from plaintiff on October 14, 1964. The record indicates that specifications were not shown to the plaintiff and that the material was from time to time ordered on a piece-by-piece basis. A running account was kept and it appears that the account was very active to January 14, 1965. Some goods were returned on February 15, 1965.

The owners moved into their home on February 26, 1965. Thereafter, on March 23, 1965, an employee of Egner picked up three large redwood boards at plaintiff lumber company to be used for shelving on the west wall of the recreation room after they had been given the same mill work treatment as had some previously installed shelves on the east wall of the recreation room. It appears that the contractor arranged for the mill work and delivered the finished product to defendants' garage. They were installed by Joseph J. Weichselbaum, the architect, and Dr. Slocumb personally put on brackets which Mr. Weichselbaum had purchased separately.

The record is not clear as to when the house was completely finished, for various finishing work was performed by Egner's men up to and after March 23, 1965. The final item furnished by plaintiff was an oak board, costing $2.40, which was sold June 18, 1965, and was used by Egner to cover a wall crack. Plaintiff's mechanics lien was prepared June 17, 1965, and filed June 18, so it did not include the oak board.

In about May or June 1965, it became apparent to the owners that Egner was not paying bills for supplies. At that time they owed Egner $4,320.77. Defendants later paid this amount to various suppliers, but plaintiff did not receive any payment on its account, which according to the mechanics lien statement amounted to $2,299.64, with interest thereon from May 23, 1965.

The trial court held that plaintiff's lien statement was only effective for the March 23 delivery in the amount of $30.10. Plaintiff appealed, contending the judgment should have been for the full amount claimed under the lien statement it filed June 18, 1965.[1]

■ The court below appears to have accepted defendants' claim that the original contract called for the supplying of materials for, and construction of, the house, including installation of items such as bookshelves by the contractor, whereas the subsequent transaction on March 23, 1965, was a separate transaction for the supply of lumber materials because Dr. Slocumb intended to install the shelves himself. This reasoning does not substantiate the finding of a separate contract upon the record before us.

There is nothing in the record to indicate affirmatively that either Egner or his employees were unwilling to install the bookshelves pursuant to the contract with the Slocumbs. The installation appears to have been so minor that Dr. Slocumb preferred to do it himself with the assistance of the architect, who saw to it that the proper brackets were provided. It is to be noted that Egner not only procured the lumber from plaintiff but also had the boards planed and finished to match the other bookshelves which were installed under the original contract. It seems most likely that since defendants Slocumb were already dealing with plaintiff through the contract with Egner they decided to obtain the boards under the same arrangements. This inference is further sup-

---

[1] Minn. St. 514.01 defines who qualify for liens under c. 514 for improvements to real estate. Section 514.08 provides in part: "The lien shall cease at the end of 90 days after doing the last of such work, or furnishing the last item of such skill, material, or machinery, unless within such period a statement of the claim therefor, be filed for record with the register of deeds of the county in which the improved premises are situated * * *."

ported by the fact that when an additional piece of lumber was required for the house on June 18, 1965, defendants went to plaintiff, who supplied it and charged its cost of $2.40 to the contractor's account. We conclude that the evidence is insufficient upon the record before us to support the existence of separate contracts, one calling for the supplying of materials for, and the construction of, the house and another contract calling merely for the supplying of material for shelving.

The fact that defendants were occupying the house approximately a month previous to March 23 is not persuasive that the original contract to complete the house was fully consummated. Defendants cite Villaume Box & Lbr. Co. v. Condon, 146 Minn. 156, 178 N. W. 492, but in that case the house was found to be completed upon occupancy, the building contractor in that case having specified that it would be complete upon occupancy and acceptance. There was no evidence of any such agreement here. The record indicates that defendant owners admitted there were several things to be done subsequent to the occupancy.

Plaintiff cites several facts appearing in the record which clearly tend to indicate the house was not completed before March 23, 1965, and that boards were then supplied pursuant to the original contract. First, defendants' exhibit D, a letter from the architect to the owner dated February 2, 1966, included a list of additions and deletions received from the contractor up to January 6, 1965, which resulted in a cost increase of $1,386, and a second list of additions and deletions received from the contractor to May 11, 1965, resulting in a further cost increase of $775.57. The latter contains 10 changes, including "[a]dd 3 shelves, rec. rm. (including hdwr.) + $46.00" and "[a]dd extra shelves, rec. rm. + $16.00." The architect testified that these changes were for the shelves on the west and east walls of the recreation room respectively. The next change was "[a]dd shelves and hardware in study + $46.92." Shelving was thus added three different times.

Second, lien statements filed by others who furnished labor or materials in the construction of the house indicated May 26, 1965, and May 21, 1965, as the last dates on which these claimants had furnished labor or material. In both cases the final work was completed 3 months after the house was occupied. These liens were paid in full by defendants.

Third, after a payment by defendants to the contractor on February 16, 1965, the unpaid balance due, as adjusted to May 11, 1965, was $4,320.77. While no part of this was paid directly to the contractor, that amount was paid to various unpaid suppliers after May 11, 1965.

Fourth, Dale Fagerlind, a carpenter for the contractor, testified that he was involved in the finishing of the house, that the house was not fully completed on February 26, 1965, and that finishing work involving lumber was required. Fagerlind visited the house several times after March 23 to make adjustments, purchasing and using whatever materials were required, and he had to install a new mailbox slot. He testified when he delivered the shelves to the house another carpenter was finishing up who might have installed the shelving.

Fifth, the architect testified there was no shelving in the original contract; that after the owners moved in, they finished the floor in the recreation room, including the floor covering; and that they then decided to use the room as a den and installed more bookcases.

Sixth, Mrs. Slocumb testified that some of the shelving was put in the recreation room shortly after they moved in and the rest of it was installed somewhat later.

Seventh, as late as June 18, 1965, the additional piece of lumber was ordered by the contractor from plaintiff. While the cost, $2.40, was small, plaintiff submits it was part of the original operation and evidence the job was not fully completed on March 23, 1965. A similar situation may be found in Kahle v. McClary, 255 Minn. 239, 96 N. W. (2d) 243.

Finally, Mr. Weichselbaum, the architect, testified that the house was basically completed and ready for occupancy on or about February 10, 1965, but that there were some unfinished items. He testified on cross-examination that the plans for the west wall bookshelves were made prior to the occupancy of the house, which further indicates that the boards were ordered pursuant to the original contract to build the house and that there was in fact no separate contract for their purchase.

We think the foregoing analysis of the record requires a finding that, although defendants Slocumb moved into the house in late February 1965, additional work remained to be done to complete the house. Clearly, all the work done was pursuant to and part of the original con-

tract, modified from time to time to build a complete house as dictated by the owners' needs.

Minn. St. 514.08 expressly authorizes the filing of a mechanics lien statement at any time within 90 days after the lien claimant has contributed his last item of labor or material. A statement filed prematurely would be ineffective. If the owners are free to claim the supplying of boards was a separate contract in the instant case, it would become extremely difficult to know when a building is completed and the materialman has furnished his last item under a running, open account such as the record discloses here.

It is the stated policy of this court to construe the mechanics lien statutes, which are remedial in nature, liberally to protect the rights of workmen and materialmen who furnish labor and materials in the improvement of real estate. Armco Steel Corp. v. Chicago & N. W. Ry. Co. 276 Minn. 133, 149 N. W. (2d) 23; O. B. Thompson Elec. Co. v. Milliman & Larson, 268 Minn. 299, 128 N. W. (2d) 751; Berglund & Peterson v. Wright, 148 Minn. 412, 182 N. W. 624; 12 Dunnell, Dig. (3 ed.) § 6033.

■ It is well settled that material delivered for the sole purpose of extending the time for filing a lien renders such a lien ineffective as to any material delivered prior to the 90-day period. Kahle v. McClary, *supra*. No evidence of connivance between Egner and plaintiff to keep the lien alive nor of any intent to deliver the three boards for the purpose of extending the lien period is present in the instant case. If a materialman begins to furnish materials for the erection or repair of a building without any specific agreement as to the amount to be furnished, or the time within which they are to be furnished, but there is reasonable expectation that further material will be required of him and he is afterwards called upon from time to time to furnish the same, he is generally entitled to a lien as under an entire contract. Under those circumstances the time for the filing of a lien is the date the last item of the account is rendered. State Sash Mfg. Co. v. Norwegian Seminary, 45 Minn. 254, 47 N. W. 796. As a general rule, in the absence of contrary evidence, separate orders and successive deliveries under an original estimate will be considered related parts of an entire contract for some

part of the work, forming a single account for the purpose of establishing a lien. Henry Simmons Lbr. Co. v. Schnobrich, 159 Minn. 116, 198 N. W. 406. See, also, 10 Thompson, Real Property (1957 replacement) § 5217.

In Paine & Nixon Co. v. Dahlvick, 136 Minn. 57, 58, 161 N. W. 257, the court said:

"* * * If the work being done is one continuous work constituting one job, though there are several agreements for the furnishing of different materials, *each being a separate contract for some part of the general work, a lien claim filed within 90 days after the last item preserves a lien for all.* Frankoviz v. Smith, 34 Minn. 403, 26 N. W. 225; American Bridge Co. v. Honstain, 120 Minn. 329, 139 N. W. 619; Northwestern L. & W. Co. v. Parker, 125 Minn. 107, 145 N. W. 964. If the contracts are separate and distinct and unrelated, not in connection with a continuous work or job, a lien claim filed does not preserve a lien upon materials furnished prior to the 90 days. Fitzpatrick v. Ernst, 102 Minn. 195, 113 N. W. 4; Northwestern L. & W. Co. v. Parker, 118 Minn. 211, 136 N. W. 855. The application of these two doctrines to the varying facts of particular cases is often attended with difficulty." (Italics supplied.)

In determining a particular case, the character of the account, the time within which the work was done or the material furnished, and the purpose in doing the work or furnishing the material afford a proper ground for determining either that there was or was not an understanding from the outset that the work should be done or the materials should be furnished whenever required. If, as here, there is a continuous dealing and a running account, and the work was done and materials were furnished at short intervals and were appropriate to the condition and progress of the building, a presumption arises that it was understood from the beginning that the claimants were to do the work or furnish the materials for construction of the building as the same would be required and in such case the date of the last item of the account is the date from which the limitation of the time of filing is to be taken. Fitzpatrick v. Ernst, 102 Minn. 195, 113 N. W. 4; 10 Thompson, Real Property (1957 replacement) § 5217.

In Kahle v. McClary, *supra*, plaintiff, a heating and plumbing corporation, entered into a verbal agreement with defendants to make the necessary alterations in a heating system. On August 9, 1955, the work began. Plaintiff's employees removed the existing furnace in the building and installed two new ones. The furnace installation was completed in late September 1955. During the winter of 1955–1956, it was discovered that the heating was inadequate. Plaintiff and defendants agreed that plaintiff, at its convenience, should install an additional hot-air register to remedy the situation. The new register was not added until September 28, 1956, a year after installation of the furnaces. A charge of $28 was made for the register. Plaintiff filed a mechanics lien pursuant to § 514.08 on November 6, 1956, for the total amount of the labor and materials. The only issue to be decided in the Kahle case was whether the filing of the mechanics lien was timely to encompass the original installations. The lower court, sitting without a jury, held for the plaintiff. This court affirmed, stating (255 Minn. 240, 96 N. W. [2d] 245):

"The law in this area is quite clear; its application is difficult. If the subsequent installation of the hot air register is an operation continuous with that of the furnaces, the lien is good. If the two operations are separate or independent, the lien has expired. The lien, of course, ceases 90 days following completion of the work unless filed. The factor determining whether two operations are continuous, or separate and independent, is the general purpose of the contract. The distinction is illustrated by language in Hazard Powder Co. v. Loomis & Campbell, 13 Ohio Dec. Reprint 333, 337, quoted earlier by our court:

" '* * * Where work, distinct in its nature, is performed at different times, the law supposes it performed under distinct engagements, as where the work at one time is for building, and at another for repairing. So, where two distinct contracts are in fact made, as * * * distinct contracts for different parts of the work, the work done under each contract must be considered as entire of itself. But when work, etc. is done or furnished, all going to the same general purpose, as the building of a house, or any of its parts, though such work, etc., be ordered and done, at different times, yet, if the several parts form an entire whole, or are

so connected together as to show that the parties had it in contemplation that the whole should form but one, and not distinct matters of settlement, the whole account must be treated as a unit, or as being but a single contract.' "

The court in the Kahle case also repeated an earlier position by stating that "a substantial rather than a technical view should be taken of the question whether its claim is founded upon one or upon separate and independent contracts." 255 Minn. 242, 96 N. W. (2d) 246; Northwestern Lbr. & Wrecking Co. v. Parker, 118 Minn. 211, 214, 136 N. W. 855, 856.

In W. B. Martin Lbr. Co. v. Noss, 256 Minn. 471, 99 N. W. (2d) 65, an action was brought to foreclose a mechanics lien. In April or May 1956, defendants arranged to erect a home. Material was delivered to the home by plaintiff between May 22 and September 12, 1956. The last delivery was two pairs of shutters on November 21, 1956, some 70 days after September 12. A mechanics lien was filed February 14, 1957, more than 90 days after the September 12 delivery but less than 90 days from the November 21 delivery. The sole issue was whether the November 21 delivery of shutters was sufficient to extend the time for filing a lien. The trial court found no connivance to defraud the owners and stated that, although the shutters were not in the original plans furnished by plaintiff, the items were of such a nature that it was reasonable to believe the owners had ordered them. The owners asserted that a supplier cannot extend the time for filing a mechanics lien by subsequent delivery of insignificant items after the contract is substantially completed, relying upon Guy T. Bisbee Co. v. Granite City Investing Co. 159 Minn. 442, 199 N. W. 17, and Hennepin Lbr. Co. v. Pedersen, 117 Minn. 534, 136 N. W. 1134. The court agreed that such an assertion is correct if the sole purpose and motive of delivery of insignificant items is to continue or revive the lien. The fact that the shutters were of little value in relation to the total material delivered was not conclusive with regard to extending the time for a lien. Similarly, the value of the redwood boards in the instant case is not conclusive in finding an intent to continue the lien.

Defendants rely upon Villaume Box & Lbr. Co. v. Condon, *supra.*

In that case the court reversed on the grounds that the record failed to support a finding that storm sashes for a sun porch were furnished in accordance with the original contract for the construction of a house. There the contractor ordered the storm sashes from plaintiff, stating that it was for defendant's house and was an extra. Plaintiff had also seen the specifications when he made his deal with the contractor and they included nothing about storm sashes for the sun porch windows, but specifically provided for storm sashes on all other windows. The testimony of defendants that the house was fully completed on September 5, 1918, and that on that day defendant owner moved in and accepted it was uncontradicted. The contract provided for a $1,500 payment when the house was completed and accepted. The $1,500 was paid on September 11. Defendant owner did not decide to add the storm sashes to her sun porch until late in October when she asked the original contractor to do it, at which time he ordered it from plaintiff, *specifying that it was an extra*. There the court stated (146 Minn. 157, 178 N. W. 493):

"When the owner determines to add something to the building after its construction has been completed and it has been delivered and accepted, materials furnished to the contractor to make the addition and not to accomplish the general purpose of the original contract are considered to be furnished under a new and independent contract. Frankoviz v. Smith, 34 Minn. 403, 26 N. W. 225; Fitzpatrick v. Ernst, 102 Minn. 195, 113 N. W. 4; N. W. L. & W. Co. v. Parker, 118 Minn. 211, 136 N. W. 855; Paine & Nixon Co. v. Dahlvick, 136 Minn. 57, 161 N. W. 257."

Thus, in the Villaume case it was found that the house was complete and the storm sashes were an afterthought and not contemplated while the house was under construction or before it was accepted. The court then found there was insufficient evidence to support a finding that the storm sashes were furnished in conformity with and in fulfillment of the original contract for construction of the house. In contrast, in the case at bar the evidence clearly is sufficient to support a finding that the parties acted under the original contract rather than a separate contract for the boards.

■ That determination is in harmony with the purpose of the statute, which is to protect laborers and materialmen. A liberal construction should be accorded it to accomplish that purpose. As was said by this court in Emery v. Hertig, 60 Minn. 54, 57, 61 N. W. 830, 831:

"* * * It is sufficient for us to say that, whatever may be the conflicting decisions of other tribunals, we are of the opinion that no narrow or limited construction of our mechanic's lien law should be indulged in by the courts, and that the labor and industry of the country should not be hampered by technicalities or harsh interpretations of what was evidently intended to be a just law for the benefit of our industrial pursuits, which tends so materially to the building of cities and towns, and is the embodiment of so much natural justice. He whose property is enhanced in value by the labor and toil of others should be made to respond in some way by payment and full satisfaction for what he has secured. To accomplish this result is the intent of the lien law."

In view of the evidence submitted in the instant case and of the purpose of the mechanics lien statute and this court's prior interpretations thereof, plaintiff is entitled to reversal of the judgment and to a judgment in the amount of $2,233.16, plus interest at 6 percent per annum from March 23, 1965, and costs and disbursements. Plaintiff is further entitled to a specific mechanics lien upon the above-described premises in the foregoing amount and to judgment of foreclosure accordingly.

Under the circumstances, no personal judgment against defendants is involved. The record herein clearly indicates that defendants were remiss in making final payments to the contractor without first obtaining lien waivers from materialmen and laborers. As stated in W. B. Martin Lbr. Co. v. Noss, *supra*, much grief and litigation might be avoided if owners would take this simple precaution or if every attorney, financier, or architect would recommend such precaution when his advice is sought under similar circumstances.

Reversed with directions to enter judgment accordingly, including order to proceed to foreclose pursuant to applicable statute.

Reversed with directions.