## CYRUS STOCKWELL *vs.* NEHEMIAH MARKS.

Where a tenant holding under a written lease erects a furnace for warming the house, thereby making a material alteration of parts of the building, and where the house would be injured by the removal of the furnace; if the tenant does not remove it during his term, he cannot maintain trover against the proprietor of the house for refusing to permit him to enter and remove it afterwards.

Nor can the tenant maintain such suit, if the lease permit him to make any alterations or improvements during his occupancy, provided the same shall not lessen the value of the property, or occasion expense to the lessor.

Where the duration of a tenant's term is fixed in his lease, his rights cease at the expiration of the term without any notice to quit.

EXCEPTIONS from the Court of Common Pleas, REDINGTON J. presiding.

Trover for a furnace used for warming a tavern house in *Calais*, called the *Boundary House*. The plaintiff entered into the occupation of the house under one *Thompson*, but before the expiration of the lease, and during the occupation of the house by the plaintiff, the defendant had become the owner subject to the lease. The lease under which the plaintiff entered, was dated *May 5*, 1836. By that lease, he was to occupy one year from *July 1*, 1836, at the rate of $525 for that year. He also by the lease had liberty to occupy for several successive years, provided, he should at the end of each year, so elect and determine. The lease provided, that the plaintiff should at the end of the term quit and deliver up the premises peaceably and quietly, in as good order and condition, reasonable use and wearing excepted, as they were then in, and not make or suffer any waste; that the lessor might enter to view the premises, and expel the lessee, if he should fail to pay the rent and to do what other things he had in and by said lease undertaken to do; that the plaintiff might, during the term he should occupy, make any alterations or improvements therein he might wish, provided, the same should not lessen the value of the property nor be any expense to the lessor. The plaintiff entered under said lease, and during the first year, placed in the basement story the furnace now in question, to construct which, took from 1000 to 1500 bricks, which were laid in lime mortar. The furnace consisted of an iron oven or stove, with grates, pipes and ventilators, besides

the bricks aforesaid.   It rested upon a foundation of stones laid
upon the ground.   That part of the basement story in and around
the spot where the furnace was put, was rough finished into a bed-
room, entry, closets and a cupboard.   The furnace when complet-
ed, occupied a space three by four feet.   In order to build it, the
floor of the basement story was taken up and two of the sleepers
on which it had rested were cut off, and a portion of them re-
moved.   The remaining part of the sleepers were well supported
by stone blockings.   In a part of the operation, 200 bricks belong-
ing to the wall of the basement story were removed from it.
Whether these bricks were used in erecting the furnace, the evi-
dence was contradictory, all the other bricks and materials for the
furnace were supplied by the plaintiff.   In preparing to erect the
furnace, there was taken away a portion of one of the side parti-
tions of the bedroom, this partition having helped to support the
floor above.   The two rough closets and cupboard, which together
had occupied a space of $3\frac{1}{2}$ by 8 feet were cut away.   To accom-
modate the pipes and ventilators the floor above was cut through
in three places, into which soap stones had been placed.   One of
the sleepers of that floor, eight inches square was cut off, and
eighteen inches in length of it removed, but a partition run along
under where the sleeper was cut, and gave sufficient support to
that part of the floor.   Another timber of that floor, called the
main trimmer, into which sleepers and other timbers were framed,
was cut into on opposite sides, to the depth of from $\frac{1}{8}$ to $\frac{1}{2}$ of its
thickness.   These cuts were four feet apart.   There was a hall in
the upper story passing the whole length of the house, and a par-
tition which contributed to its support, passed directly across said
trimmer.   The hall was arched, and the house had no beams ex-
tending from plate to plate, but had collar beams.   It was in evi-
dence, that the plaintiff during his occupancy had made considera-
ble improvements upon the house, the expenses of which were es-
timated at from $100 to $400.   The furnace could not have
been removed as it then was, but must have been taken to pieces
in order to be removed.   Several witnesses testified upon the ques-
tion of injury done to the house by said alterations, some testifying
that if the furnace were removed, the house could not be made in
all respects so good as before, and others, that the house would not

be materially injured, except for the expense of repairing, which was estimated by the witnesses at sums varying from $10 to $50. On the 30th of *June*, 1837, plaintiff gave written notice to said *Thompson*, that he should not occupy the premises the second year. He however remained in the house beyond the expiration of the first year, and there was no evidence that he had ever been notified to quit. As early as the 7th of *August*, he began to remove his furniture from the house, and on account of the moving, his wife slept that night and dined the next day at a neighbor's. There was no proof that she was ever again at the house. On the morning of the 7th or 8th of *August*, *John Marks* placed one *Thompson* in possession under the defendant. It was admitted, that *John Marks* and *Thompson* were the defendant's agents on both said days, and *Thompson* has ever since remained in the house. On the day aforesaid, about eleven o'clock in the forenoon, *Thompson* brought a part of his furniture into the house. In the same forenoon, the plaintiff directed one *Ward* to remain in the house and keep possession for him, a part of the plaintiff's furniture then being in the house. This employment of *Ward* was known to *Thompson*. At 9 or 10 o'clock that evening, *Ward* with some friends undertook to bring in a bed to lodge upon, the plaintiff's beds having then been all carried away. *Thompson* forbade the bringing in of the bed, and with a stick in his hand, resembling an axe-handle, which he flourished over the head of *Ward* and his friends, ordered them to leave the house, and drove them out, and they were compelled to leave. On the 9th of *August*, the plaintiff tendered money for rent to the defendant, which he received, as tendered, and gave therefor to the plaintiff a receipt in the following form.

" Rec'd of *Cyrus Stockwell* $53,95 on account of rent of the
" *Boundary House*, which I receive without any prejudice to my
" legal rights against said *Stockwell;* not claiming rent after the
" 7th of *August*, 1837.                *Nehemiah Marks.*
" *Calais, Aug.* 9, 1837."

On the 9th of *August*, 1837, the plaintiff demanded the furnace of the defendant, at defendant's house in *St. Stephens,* in *New-Brunswick,* about half a mile from the *Boundary House,* and defendant replied, that he should do nothing about it. A witness

testified, that at the plaintiff's request, he went to the *Boundary House* about ten o'clock in the forenoon of 8th of *August* ; that soon afterwards, *Thompson* came in and brought a bed and some other furniture ; that thereupon the plaintiff told said *Thompson* and said *John Marks,* that he would not yield the possession of the house, except by force, till he had removed his effects away ; and he requested them to permit him to remove the furnace among other things ; that *Thompson* refused to permit such removal, and threatened to knock the plaintiff down if he should attempt to remove it ; that the plaintiff thereupon told both *Marks* and *Thompson,* that he would put the house in as good repair as before, if they · would allow him to remove the furnace ; that they forbade its removal ; and that *Thompson* at that time appeared to take forcible possession of the house.    The testimony of this witness was not contradicted.

The presiding Judge instructed the jury, that the plaintiff at any time during his occupancy, had a right to take away the furnace, provided, he restored the house to its original form, and put it into as good repair as before ; that if he really in good faith wished and intended so to do, and would have so done, had he not been prevented by his forcible expulsion by defendant's agent, under the circumstances testified to in the case, he was entitled to a verdict in his favor.    The verdict was for the plaintiff, and the defendant now excepted to the instructions of the Judge.

*B. Bradbury,* for the defendant, argued :

. 1. That the furnace was a fixture of the description which is not by law removable. .*Amos & Fer. on Fixtures,* 8, 14, 78 ; 3 *East,* 53 ; 4 *Moore & P.* 143 ; 6 *Bingh.* 637 ; 2 *Brod. & B.* 54.

2. The stipulations in the lease show, that it was not the intention of the parties, that the tenant should remove any erections or improvements made by him during his term, unless for the purpose of making equally valuable erections.·  1 *Taunt.* 19 ; 2 *Stark. R.* 403 ; 2 *B. & Cres.* 608.

3. The plaintiff covenanted in his lease to quit and deliver up the premises at the end of the term in as good order and condition, reasonable use and wearing excepted, as they were then in, or should be put in, and not make or suffer any strip or waste, which could not be done, if the furnace was removed.    These covenants

would be broken by its removal. 2 *Brod. & Bing.* 54; *Co. Litt.* 53, *a*; 3 *East*, 38.

4. If the plaintiff might have removed the fixtures in question during the continuance of his term, he lost his right by not doing so. He not only did not attempt to remove them during his term, but not until after he had ceased to be in the occupation. *Amos & F.* 86 to 96; 7 *Taunt.* 191; *Gaffield* v. *Hapgood*, 17 *Pick.* 192; *Co. Litt.* 270, *b*; 8 *East*, 358; 1 *T. R.* 54; *ib.* 162; *Sampson* v. *Henry*, 13 *Pick.* 36.

5. The facts do not show a conversion of the furnace. The defendant did not prevent the plaintiff from taking it away.

6. The Judge's charge decides that certain facts, if proved, constitute a conversion, and entitle the plaintiff to a verdict; but he ought to have left it to the jury to say whether upon the facts proved there was a conversion. The court cannot infer a conversion, but the jury must find it. *Dane, c.* 77, *art.* 9, § 29.

7. This action is not maintainable against a landlord for fixtures annexed to the freehold. *Amos & F. on Fixtures*, 243; *Gaffield* v. *Hapgood*, 17 *Pick.* 194.

*Bridges*, for the plaintiff, contended, that the furnace was not a part of the realty, but merely an article of furniture, and subject to be removed. *Kent* speaks of stoves and furnaces as articles of that character which a tenant has the right to take with him on going out, when he has put them up. 2 *Com.* 343, 344. There is no distinction between articles put up in the way of one's trade, and put up for use and convenience. This Court has carried the doctrine much farther than we contend for in *Russell* v. *Richards*, 1 *Fairf.* 429. Stoves and furnaces have now become of common use, and are not considered as belonging to the building, but merely as furniture. He commented upon the facts in the case, and contended that the furnace could be taken away without injury to the building, and that the plaintiff was in possession when he attempted to remove the furnace and was forcibly prevented by the defendant. 9 *Com. L. Rep.* 30; 19 *ib.* 123; 20 *ib.* 407.

The plaintiff by the lease had the right to make alterations. This very case must have been contemplated, when the lease was made.

By taking rent for the house after the year expired, the defendant admits that the plaintiff was rightfully in possession. He was

entitled to at least thirty days notice to quit, and then could be expelled only by process of law, and not by force.  *Davis v. Thompson,* 13 *Maine R.* 209.

The opinion of the Court was drawn up by

WESTON C. J. — The subject matter of this suit was a fixture, the construction of which having occasioned a material alteration of the house, in many parts of its interior arrangement, it would be going far to hold it removable, even between landlord and tenant. Such removal is not allowed, where it may cause any material injury to the estate.  2 *Kent,* 342.  Thus a conservatory, erected by tenant for years, on a brick foundation, attached to a dwelling-house, and communicating with it by windows, opening into the conservatory, and a flue passing into the parlor chimney, becomes part of the freehold, and cannot be removed by the tenant or his assignees.  *Buckland* v. *Butterfield & al.* 2 *Brod. & Bing.* 54.

Nor is the exercise of this right necessarily deducible from the permission, accorded to the plaintiff, to make any alteration or improvement, during his occupancy, provided the same should not lessen the value of the property, or occasion expense to the lessor. If however, during the term, the plaintiff had again altered the house, by restoring it, if it could be done, to its original condition, the removal of the furnace, under this clause in the lease, might have been justified.  This not having been done, it may deserve serious consideration, whether by fair implication the plaintiff was not bound to leave, for the benefit of the estate, alterations and improvements made by himself, under the stipulations in the lease. But if in conformity with the liberal rule, which prevails between landlord and tenant, the plaintiff had a right to remove the furnace as his property, the authorities require, that it should be exercised during the term.  2 *Kent,* 346.

In *Lee* v. *Risdon,* 7 *Taunton,* 188, it was held, that the tenant may sever fixtures, erected by himself, during his term but not afterwards, and that having ceased to be goods and chattels, and becoming part of the freehold, unless so severed, trover cannot be maintained for them.  And the authority of this case was recognized in *Colegrave* v. *Dios Santos,* 2 *Barn. & Cress.* 76.  Where a tenant affixed bells to a house, which he did not remove during

his term, it was held, that they became the property of the owner of the house. *Lyde* v. *Russell*, 1 *Barn. & Ald.* 394. In *Gaffield* v. *Hapgood*, 17 *Pick.* 192, this subject was examined, and it was held that the tenant must exercise his right during the term. *Penton* v. *Robert*, 2 *East*, 88, may seem to maintain a different doctrine. But that was the case of a mere ground lease. The buildings were erected by permission, and remained therefore personal property, as this Court has decided in *Russell* v. *Richards & al.* 1 *Fairf.* 429. It does not follow, that the same rule is to be applied to additions made, or fixtures attached, to an existing house, taken on lease, and not removed during the term.

Here the lease expired, by its own limitation, on the first of *July*, 1837. In such case, notice to quit, to determine the lease, is not required even by the English law. *Messenger* v. *Armstrong*, 1 *T. R.* 54; *Flower* v. *Darby*, *ibid.* 162. The plaintiff had a right to hold longer, upon his electing so to do; but he expressly declined to have his term enlarged, and so notified the agent of the defendant. After the expiration of the year then, he had no rights whatever in the house, although his subsequent occupancy was justified by the rent received up to and inclusive of the seventh of *August*. If the lease had been determinable at will, and it had been determined by the lessor, the lessee would have been entitled to a reasonable time to remove his effects, with the right of ingress and egress for this purpose. And by statute, thirty days notice must be given, to entitle the lessor to maintain forcible entry and detainer. *Davis* v. *Thompson*, 13 *Maine R.* 209. But in this case the duration of the plaintiff's right in and to the house was fixed by the lease. If the plaintiff had left in the house, after his term a personal chattel, which the defendant had retained, and had refused to deliver up on demand, the plaintiff might have maintained trover, as an apt remedy for redress. But the furnace had ceased to be a personal chattel, and had become a part of the freehold. The plaintiff, instead of severing it therefrom during his term, had suffered it to remain, incorporated with the house, sometime after its termination. If the defendant would not then permit him to sever it, whatever other remedy may exist, if any, it appears to us, that he cannot be held liable in trover.

*Exceptions sustained.*