STATE EX REL. LEONARD ET AL. V. COMMISSIONERS OF CRAWFORD CO.

1. WHAT WILL AMOUNT TO AN "ADDITION" TO A BUILDING WITHIN THE MEANING OF SEC. 795, REV. STAT.

Where a board of county commissioners have erected a steam heating plant in a public building, and such plant is attached to the building in such manner and for such purpose, that it becomes a part of it ; such heating plant thereby becomes an "addition" to such building within the meaning of sec. 795, Rev. Stat., and the letting of a contract for its construction is governed and controlled by the provisions of that section.

2. PROVISIONS OF SEC. 795, REV. STAT., ARE MANDATORY.

Before the commissioners can properly advertise for proposals or let a contract for the construction, alteration or addition to a public building, they must first comply with the requirements contained in sec. 795, Rev. Stat.; these requirements are imperative, and until the board does and performs all the requirements contained in this section, it is without authority to act, and destitute of power to advertise for proposals or to let a contract.

3. MANDAMUS WILL LIE TO COMPEL COMMISSIONERS TO AWARD CONTRACT TO LOWEST BIDDER, WHEN THEY HAVE COMPLIED WITH SEC. 795, REV. STAT.

When the board of commissioners have found it necessary to erect a public building, and have complied fully with the provisions of sec. 795, Rev. Stat., so that nothing remains but to ascertain the lowest bidder and award the contract, it then becomes their duty to award the contract to such bidder, and mandamus will lie to compel the discharge of such legal duty ; but until the board have complied fully with the provisions of such section, it still remains a matter of discretion with the board, and its exercise cannot be directed or controlled by mandamus.

4. BIDDER MUST GIVE GOOD AND SUFFICIENT BOND.

Before a contract for the erection of a public building can properly be awarded to a bidder, such bidder must first give a good and sufficient bond, properly conditioned, and failing to give such bond he cannot compel the board to award the contract to him.

APPEAL from the Court of Common Pleas of Crawford county.

DAY, J.

This is a proceeding in mandamus, and its object and purpose is, by the mandatory order of the court to require the commissioners of the county to award and let to the relators a contract for constructing a steam heating plant in the court house and jail, on the ground and for the reason that they are the lowest and best bidders therefor.

The substance of the complaint is, that respondents, having determined to erect a system of steam heating for the court house and jail, caused plans and specifications for the improvement to be made, which were duly approved by them, and upon which, by published advertisement, they solicited proposals to supply the necessary material and labor

to fully construct and complete such system of steam heating; that, in pursuance to such request, relators prepared and submitted a proposal, as did other parties, including a Mr. Halley; that relators' proposal was $163 less in amount than that of any other bidder; yet that respondents awarded the contract to said Halley, at a price in excess, to the extent of said $163, of the proposal of relators. A peremptory writ of mandamus is prayed for.

The board of commissioners, by an answer, take issue with the material averments of the complaint; deny that relators were the lowest and best bidders, and that they were entitled to have the contract awarded to them; assert that all the bids were rejected, and that no contract was awarded to any one under the advertisement for proposals; and that the said board of commissioners have purchased the necessary material and employed the necessary labor and have caused the said plant to be constructed and fully completed and have had it in successful operation for a long time; and having fully answered respondents ask to go hence and recover costs. By reply the relators insist that the final rejection of Halley's proposal, and the construction of the plant under the direction of the commissioners, was only colorable and not in good faith, and pray as in their complaint.

The case was heard and submitted on the evidence from a consideration of which the court finds and states the following as undisputed facts: The respondents are the duly qualified and acting commissioners of Crawford county; they found it necessary and determined to build a power house and put in a steam heating plant for the court house and jail of said county, and for that purpose procured a plan and specifications to be prepared, which were approved, and public advertisement made, inviting proposals to supply the necessary materials and labor and construct the said power house and heating plant, in accordance with said plan and specifications. The advertisement requested each bidder to specify with particularity, in the proposal submitted, the precise kind and quality and the exact amount of material to be used in the construction of said plant. The plan and specifications did not contain a definite description of the kind, quality and amount of materials to be used, nor were they accompanied by an accurate bill showing the exact amount of all the different kinds of materials to be used in the construction of the plant, nor by a full and complete estimate of each item of expense, and the entire aggregate cost, of the plant. A large number of proposals were prepared and submitted to the board in pursuance of the advertisement. Upon examination of the several bids, the bid of relators was found to be the lowest, in the sum of $163, and that of——— Halley the next lowest. The proposal of relators did not specify the precise kinds and amount of materials it was proposed to use. Halley's proposal was more definite in that respect. The board of commissioners rejected the bid of relators and accepted that of Halley. The relators did not give, or tender, a proper bond, conditioned for the faithful performance and completion of the contract if awarded to them, but they were able and willing to give such bond, if demanded. After the lapse of about ninety days, the board, with the consent of Halley, rejected his bid also, and proceeded, in good faith, and constructed the steam heating plant, under its own direction and supervision, and has fully completed the same.

By express provision of statute, mandamus will not issue to control judicial or official discretion, but only to "require an inferior tribunal to

State ex rel. Leonard et al. v. Commissioners.

exercise its judgment, or proceed to the discharge of any of its functions," by "commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station." Sections 6741–6742, Rev. Stat. So, that to entitle relators to the relief they seek a mandatory order on the respondents, to accept relator's proposal and award them the contract for constructing the steam heating plant, it is necessary that the facts appearing establish such a situation or condition that it becomes the clear official duty, on the part of the board of county commissioners, to let the contract to the relators, at their proposal. Stating it differently, such situation and condition must be established by the evidence, that the law, acting thereon, makes it the legal duty of the board to award the contract to the relators; and if the facts appearing show no such legal duty, but on the contrary, shows a legal duty to not award the contract to the relators, or to any one, then relators have mistaken their remedy, and must suffer non-suit. Otherwise if a legal duty is made manifest by competent evidence. The claim is asserted that under the provisions of secs. 795, 797 and 798, Rev. Stat., and the facts as they are proven, it became the plain duty of the respondents, as a board of commissioners, to award the contract for supplying the necessary materials and constructing the proposed steam heating plant to the relators. These sections do authorize the making of plans and specifications, and estimates of cost and expense of constructing public buildings, additions to buildings, etc., the advertising for proposals and the letting of contracts for the construction of the same; and define the powers and duties of the commissioners touching such matters, and are relied on by relators as constituting and fixing a definite condition, entitling them to the relief they are demanding.

The provisions of sec. 795, Rev. Stat., so far as they relate to and have bearing on the proposition before the court, are as follows:

"In all cases where it becomes necessary for the commissioners of any county to erect or cause to be erected any public building, * * * or where it is necessary to make any addition or alteration of the same, whether the same is done under a general or special law passed for that purpose, such commissioners, before entering into any contract for the erection, alteration or repair thereof, or for the supply of any materials therefor, shall make, or may procure some competent architect or civil engineer to make full, complete and accurate plans therefor, showing all the necessary details of the work and materials that will be required for the same, together with working plans suitable for the use of the mechanics or other builders during the constructing thereof, so drawn as to be easily understood; and also accurate bills, showing the exact amount of all the different kinds of materials to be used in the erection thereof, addition thereto, or in the alteration of the same, and they shall accompany the plan or plans. The architect or civil engineer shall also furnish complete specifications of the work to be done, showing the manner and style in which the same will be required to be done, and giving such directions for the same as will enable any competent builder to carry them out; afford to bidders all needful information to enable them to understand what will be required in the construction * * * thereof; he shall also make a full, accurate and complete estimate of each item of expense, and the entire aggregate cost of the building * * * or of any addition to * * * when completed."

Counsel for respondents urges that this particular contract for the erection of a steam heating plant, is not included or covered by the pro-

visions of the section just quoted, as not being a building, an addition or an alteration of a building, and therefore, there is no requirement that the contract for its construction be let at public or competitive bidding. The suggestion is not warranted by the facts, and is wholly intenable, as a legal proposition. The steam heating plant is of such character, and is attached to the building in such manner and for such purpose, that it becomes a part of it, and so is included and referred to in the section as, "an addition to a building," and the letting of a contract for its construction is governed by the provisions of the section.

Certainly the power to make contracts for, and to secure the construction of public buildings, and make alterations and additions thereto, is, by the provisions of law, vested in the commissioners of a county ; and equally certain is it that a definite limitation, or rather condition precedent to the exercise of that power, has been imposed by the provisions of sec. 795, Rev. Stat., just above quoted. "Before entering into any contract for the erection" of any building—says the section, "the commissioners shall make, or cause to be made, full, complete and accurate plans therefor, showing all necessary detail of the work and materials that will be required for the same ;" and working plans for the use of the mechanic, so drawn as to be easily understood ; "and also accurate bills, showing the exact amount of all the different kinds of materials to be used ; and these plans and bills must accompany the plans ; and there must also be made full, accurate and complete estimates of each item of expense, and the entire aggregate cost," of the structure to be erected. These requirements are imperative, and necessary to be observed before the commissioners can let a contract, or properly advertise for proposals for a contract. They are wise and beneficent, and serve the double purpose of compelling the officers to exercise their judgments, not only as to the general plans and specifications of the structure, but as to all the matters of detail, such as the quality, quantity and style of materials, and the estimated cost and expense of each item, and the aggregate cost of the whole ; and affords needed protection to the public, and as well to honest contractors and builders. So we say, the making of plans and specifications, accurate bills showing precisely the different kinds and the exact amount of materials required, estimates of cost and expense of the items and in the aggregate, all settled and approved by the exercise of the judgment of the commissioners acting as a board, are conditions precedent to the exercise of the power to erect public buildings and additions thereto, or to advertise and let contracts for the erection thereof. Until the board does and performs all the requirements of the section it is without authority to act, and destitute of power to advertise for proposals or to let a contract.

The evidence heard upon the trial and bearing upon the, as we conceive, controlling question in the case, is practically without conflict, and is all to the effect, that while possibly a sufficient general plan was made, or caused to be made by the commissioners, there was very little definite specification—certainly not such definite and clear specifications, showing all the necessary details of the work and materials required for the work, as the section contemplates. There was absolutely no bill or bills showing the "exact amount of all the different kinds of materials to be used in the construction" of the plant, and there was no estimate of the cost and expense, either of the items or in the aggregate. These omissions and defects in definite specifications and estimates, the board of commissioners undertook to cure and supply, by requiring bidders to

make and file with their proposals, accurate specifications and bills of materials, with the estimated cost thereof, as required by the statute. This would have been proper under the provisions of sec. 796, Rev. Stat., as such action is therein provided for. But that section has special reference to the letting of contracts for bridges and bridge work, and is not believed to apply in the matter of letting contracts for buildings, or additions to buildings, provided for in sec. 795, Rev. Stat., and if it had application, the fact would not be helpful to relators, for they omitted to make and file with their proposal, the required definite descriptive bills of material and estimates of cost and expense of the various items.

In any event and at all times, when the board of commissioners have found it necessary to erect a public building, the board is required to exercise a sound discretion in determining the character and extent of the building, in making or causing to be made, plans for its construction, and in selecting the materials of which it is to be constructed. The board must exercise its judgment in all these respects. This is imperative, and may not be omitted. When that is done, and is put in permanent and definite form, such as by accurate plans, specifications and descriptive bills of materials, giving the precise amount, quality and kind of material required, with an estimate of the cost; with nothing indefinite or uncertain, but altogether definite and certain as provided by the law, the board has exercised its discretion—the discretion lodged, in it by the law, so that nothing remains but to ascertain the lowest bidder and award the contract. In such case it becomes the legal duty of the board to award the contract to the lowest bidder, and mandamus will lie to compel the discharge of such legal duty. But until the discretion has been exercised and the decision put in proper form by definite plans and bills describing the precise kind, quality and amount of material, as required by sec. 795, Rev. Stat., it still remains a matter of discretion with the board, and its exercise cannot be directed or controlled by mandamus.

There is another reason why the relief sought by relators in this case should not be allowed. The requirement of the law is, that before a contract can properly be awarded to a bidder, such bidder must first give a good and sufficient bond, conditioned for the faithful and proper performance of the contract if awarded, etc. This also would seem to be a condition precedent to the awarding of the contract, especially if the board so requires. The offer of a bond, properly conditioned and with proper sureties, should accompany the proposal, as an earnest of good faith and to entitle the bid to consideration. The relators in this case, did not give or tender such a bond, and so have not put themselves in such position that it becomes the legal duty of the board to award them the contract on their proposal.

From any view we are able to take of the case, on the law and facts appearing, we do not find a situation or condition established by the evidence submitted, that makes it the official duty of the board of commissioners, respondents in this case, to give the contract for furnishing the labor and material for the construction of a steam heating plant in the Crawford county court house and jail to the relators. In our opinion the board very properly rejected all the proposals submitted, including that of relators, and its conduct is commended as entirely proper and in accordance with law. The finding is against the relators, and their petition is dismissed, and they required to pay the costs.

*G. J. Marriott*, for the relators; *P. W. Pool, Finley & Gallinger, Beer, Bennett & Monnett*, for respondents.