(93 Misc. Rep. 530)

LEVENSON WRECKING CO. v. HILLEBRAND.

(Supreme Court, Appellate Term, First Department.    February 23, 1916.)

1. TROVER AND CONVERSION ☞16—CONDEMNATION—PURCHASE OF BUILDING BY WRECKER—FIXTURES—REMOVAL BY TENANT.

The city of New York condemned premises held by defendant as a tenant and contracted with a wrecker to remove the buildings. The contract provided that all materials removed should become the property of the wrecker. After the condemnation proceedings defendant sold the contents of the building at auction, including its steam heating plant and a brass area railing. The wrecker brought this action in trover and conversion for the value of the heating plant and railing. *Held*, that the action would lie, since the plaintiff had an existing right to the immediate actual possession of the articles in question, at the time of the conversion.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 119–147; Dec. Dig. ☞16.]

2. FIXTURES ☞15—HOTEL AND SALOON—HEATING PLANT—AREA RAILING—"TRADE FIXTURE."

The heating plant in a building used as a hotel and saloon, and a brass area railing on the premises, are not "trade fixtures."

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 23–29; Dec. Dig. ☞15.

For other definitions, see Words and Phrases, First and Second Series, Trade Fixture.]

3. FIXTURES ☞33—NEW LEASE—WAIVER.

Where defendant lessee received an award in condemnation proceedings by the city in condemnation of the leased premises, and thereafter entered into a new lease with the city, without therein reserving the right to remove fixtures from the premises, the acceptance of such new lease was a waiver and abandonment by the defendant of the right to remove fixtures.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 64, 65; Dec. Dig. ☞33.]

4. TROVER AND CONVERSION ☞62—DAMAGES—EVIDENCE.

In an action of trover and conversion by a wrecking contractor to recover the value of steam heating plant and brass area railing removed from the building, which had been condemned by the city and sold by the tenant, a judgment for plaintiff for $475 *held* against the weight of the evidence, requiring a reduction to $280.

[Ed. Note.—For other cases, see Trover and Conversion, Dec. Dig. ☞62.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from City Court of New York, Trial Term.

Action by the Levenson Wrecking Company against Henry Hille-brand. From a directed verdict for the plaintiff, defendant appeals. Affirmed on condition.

Argued February term, 1916, before LEHMAN, WEEKS, and DELEHANTY, JJ.

Harry Edwards, of New York City (Henry A. Rubino, of New York City, of counsel), for appellant.

Feltenstein & Rosenstein, of New York City (Moses Feltenstein, of New York City, of counsel), for respondent.

WEEKS, J. This action is brought for the conversion of a steam heating plant, including a six-section boiler and pipes, radiators, and other appurtenances, as well as a brass railing, situated in the premises 513–517 Pearl street, in the city of New York. The defendant had been a tenant of said premises, where he conducted a hotel and saloon business, and the articles claimed to have been converted were placed in the premises by defendant's father, who formerly conducted the business. The boiler was used to heat the living rooms of the defendant and the halls. The brass railing was on the outside of the building, evidently to guard an areaway.

The premises in question were acquired by the city of New York for the courthouse site in condemnation proceedings in which the defendant received an award for the unexpired term of his lease. The city took title to the premises on August 1, 1913, and on August 15, 1913, rented the premises to the defendant from August 1, 1913, to September 30, 1913, at a rental of $150 per month, the defendant agreeing to make all repairs and to vacate the premises on five days' notice. On September 25, 1913, the courthouse board of the city of New York made an agreement with the plaintiff for the wrecking, demolition, and removing of the buildings in which the articles claimed to have been converted were contained. The essential feature of this contract is as follows:

"Article 1. The contractor shall wreck, demolish, raze, and remove the buildings hereinafter described in accordance with all the terms and conditions of the sale attached to the form of bid, a copy of which is attached hereto and made a part of this contract; said buildings being known and described as follows: Parcel 1, Nos. 515–517 Pearl street. All the materials or portions thereof removed from said buildings, upon removal, to become and be the property of the contractor."

On September 29, 1913, defendant sold at auction the contents of the building, including the steam heating plant and railing in question, and received the proceeds of the sale.

At the close of the case the defendant's counsel moved that the complaint be dismissed, on the ground that plaintiff had not shown title to the property alleged to have been converted, and moved for the direction of a verdict, on the ground that they were trade fixtures, and that defendant had a right to remove them before the expiration of his term. Counsel for plaintiff also moved for the direction of a verdict in favor of the plaintiff, and no request was made by either party to

submit any questions to the jury, and the court granted plaintiff's motion and directed a verdict for the plaintiff for the full amount claimed, to wit, $400 for the steam heating plant and $75 for the railing, together with interest.

[1] The plaintiff showed an existing right to the immediate actual possession of the articles in question at the time of the alleged conversion (Smith v. Smalley, 19 App. Div. 519, 46 N. Y. Supp. 277; Byrne v. Weidenfeld, 113 App. Div. 451, 452, 99 N. Y. Supp. 412) and was entitled to maintain the action for conversion (Melton v. Fullerton-Weaver Co., 214 N. Y. 571, 108 N. E. 849).

[2, 3] The articles had no connection with the business carried on by the defendant, and could not be considered trade fixtures, and the acceptance of the new lease by the defendant after the award in the condemnation proceedings, without reserving the right to remove the fixtures, was, in any event, a waiver and abandonment by the defendant of the right to remove the fixtures, if any such right existed. Van Vleck v. White, 66 App. Div. 14, 72 N. Y. Supp. 1026.

"If a tenant, having the right to remove fixtures erected by him on the demised premises, accepts a new lease of such premises, including the buildings, without reservation or mention of any claim to the buildings, and enters upon a new term thereunder, the right of removal is lost, notwithstanding his actual possession has been continuous." Loughran v. Ross, 45 N. Y. 792, 6 Am. Rep. 173.

"A tenant may remain in possession after the old lease has expired; but, unless he reserves the right under the new lease to remove the fixtures upon the land, the right will be deemed to have been abandoned, and they will become the property of the landlord." Talbot v. Cruger, 151 N. Y. 117, 45 N. E. 364.

[4] The evidence, however, does not justify a finding for the plaintiff for the full amount of its claim. The only evidence given by plaintiff as to value was the testimony of its secretary that the reasonable market value of the brass railing was $75 and of the steam heating plant was $400; but he also testified that in order to get the boiler out of the building it was necessary to take it apart and remove it, one section at a time. The defendant proved that the entire steam heating plant, when originally installed, 18 years before, had only cost $435, and that its reasonable market value at the present time, to a person who had to remove it from the building, was not more than $50 or $60, and that the value of the railing when new was $75, but as a secondhand railing was not worth more than $15.

Upon this testimony it was manifestly against the weight of evidence to award plaintiff $75 as the value of the brass railing and $400 as the value of the steam heating plant, and the judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event, unless plaintiff will stipulate to reduce this judgment to the sum of $280 and costs in the court below, in which case it will be affirmed, without costs. All concur.