## NINE HUNDRED MAIN, Inc., v. CITY OF HOUSTON et al.

### No. 11132.

Court of Civil Appeals of Texas. Galveston.

Feb. 27, 1941.

Rehearing Denied May 8, 1941.

Kayser, Liddell, Benbow & Butler and Jack Binion, all of Houston, for appellant.

Hirsch, Susman & Westheimer, Harry Susman, and Walter J. Morrison, all of Houston, for appellee Levy Bros.

No brief filed for appellee City.

GRAVES, Justice.

This appeal is from a judgment of the 11th District Court of Harris County, sitting without a jury, awarding the City of Houston a $650.37 judgment against the appellant, a private corporation, for 1938 city taxes on the "air-conditioning system" located in a part of its "Chamber of Commerce Building" in Houston, together with foreclosure of a tax lien therefor upon such "system", as being pursuant to R.S.Articles 7146, 7172, upon a holding that the "air-conditioning equipment and system" in the building constituted "a substantial addition to and improvement of it", hence was a part of the realty. The decree recited an agreement between appellant and the appellee, Levy Bros., likewise a corporation, that the City was entitled to so recover against either the appellant or the appellee, and acquitted the appellee of all liability to appellant, or to the City, for such taxes, but specially provided that "this judgment is without prejudice to either defendant as to the claim of 900 Main, Inc., against Levy Bros. Dry Goods Co., inc., for reimbursement."

The court supported its judgment with these findings of fact and conclusions of law:

"Findings of Fact.

"1. On May 19, 1928, defendants entered into a lease agreement covering the basement, first and part of the second, third and fourth floors of the building now occupied by defendant Levy Bros. Dry Goods Company, which lease contains the following provisions:

"'That the tenant shall not, without the prior written consent of the landlord, make any substantial alteration, addition or improvement in or to the demised premises and all alterations, additions or improvements which may at any time be made in, to or about the demised premises shall be and remain the property of the landlord and shall be surrendered with the demised premises as a part thereof without waste or injury at the termination of the term hereby granted, except that the tenant shall have the right, at the expiration of the term hereby granted, to remove from the demised premises all fixtures which may theretofore have been installed by the tenant or installed by the landlord and paid for by the tenant, which can be removed without substantial injury to the building.

"'That the tenant shall and will quit and surrender the demised premises at the termination of this lease in as good order and condition as the same were on the date of their delivery to the tenant, reasonable wear and tear and damage by the elements excepted.'

"2. That subsequent leases and agreements between the defendants carried forward and incorporated in them the above provisions.

"3. That on March 13, 1937, the defendant Nine Hundred Main, Inc., and the defendant Levy Bros. Dry Goods Company entered into an agreement for the installation on the leased premises by Levy Bros. Dry Goods Company of an air-conditioning system.

"4. That in 1937, the defendant Levy Bros. Dry Goods Company, at its expense, installed in the leased premises an air-conditioning system costing approximately Eighty-five Thousand Dollars ($85,000.00).

"5. That the air-conditioning system is composed in part of machinery placed in the basement, and enclosed on one side by a concrete wall and on three sides by hollow-tile walls; that the machinery in the basement weighs about forty thousand pounds (40,000 lbs.).

"6. That the air-conditioning system is composed of a compressor resting on steel places in the basement of the building, connected to the building with pipes and electric conduits, and that it would be necessary to tear out a hollow tile wall in order to remove the compressor; that there is also

in the basement circulating ice water pumps set on bolts in green concrete, a vent fan bolted in the wall, and electric starter and electric panel push-button controls set into the wall; eleven (11) cooling units situated throughout the basement and five floors of the leased premises, weighing between two thousand (2,000) pounds and ten thousand (10,000) pounds each, held by expansion bolts and an iron cradle to the ceiling, walls and floors of the leased premises, and that some of said cooling units were enclosed by plaster partitions with drop doors for access to the cooling units; that there is a large humidifier in the basement connected to the floor by expansion bolts; that in 1938, a cooling tower was situated on the roof, which rested on eye-beams, which, in turn, were supported by an extension from the floor below and bolted to grillage; that ducts were built throughout the entire basement and first, second, third, fourth, and fifth floors, and were enclosed by plaster and attached to the building by plaster and furred in; that there was also grills and thermostats.

"7. That by removing the system, 40 per cent of the cost of the installation of the system would be lost.

"8. That said air-conditioning system can be removed without doing substantial injury to the building.

"9. That by removing the system, the building would be damaged approximately the sum of Two Thousand Five Hundred Dollars ($2,500.).

"10. That approximately Four Thousand Dollars ($4,000) were paid to a refrigeration engineer for the purpose of designing this system for the premises, and that the engineer spent several weeks in studying, inspecting and examining the leased premises for the purpose of designing the proper equipment.

"11. That the system extending throughout the five floors and basement, although composed of many parts, is one integral unit.

"12. That there was a fitness or adaptation of the cooling system for the use for which the premises were originally laid out, to-wit, a department store.

"13. That Levy Brothers, at the time of the installation of the air-conditioning system, intended for the same to be an addition and improvement to the building, but I further find that this intention on the part of Levy Brothers was an undisclosed intention and was not disclosed to nor discussed with Nine Hundred Main, Inc. I further find that it was the intention of Nine Hundred Main, Inc., at the time of the installation of the air-conditioning system, that the air-conditioning system should be a fixture and should not become an addition to nor an improvement to the premises, but in this connection, I further find that this was an undisclosed intention upon the part of Nine Hundred Main, Inc., and was not disclosed to nor discussed with Levy Brothers Dry Goods Company.

"14. That the various written contracts entered into between Nine Hundred Main, Inc., as Lessor, and Levy Brothers Dry Goods Company, as Lessee, are unambiguous.

"Conclusions of Law.

"1. That the undisclosed intention of Levy Brothers and the undisclosed intention of Nine Hundred Main, Inc., at the time of the installation of the air-conditioning system, nullify each other and have no probative effect as a matter of law, in determining whether said air-conditioning system is an improvement and addition to the building, or a fixture.

"2. That the air-conditioning system was and is annexed to and a part of the building.

"3. That the air-conditioning system, as a matter of law, is an improvement and addition to the building, and not a fixture.

"4. That Nine Hundred Main, Inc., should pay the taxes on the air-conditioning system due to the City of Houston.

"Norman Atkinson,
"Judge of the 11th District
"Court of Harris County, Texas."

None of the quoted fact findings are primarily challenged here by either party, but the appellee, "in the event of the reversal of the judgment of the trial court", advances in its brief two cross-assignments of error, in that way contingently contending that quoted finding No. 8, to the effect that the "air-conditioning system could be removed without doing substantial injury to the building", was not sustained by the testimony.

In this court the parties agree in substantial substance upon two things: First, that the appeal presents for decision but one question, and second, that it is determinable from a proper construction of the written contracts between the parties, dealing with the subject-matter of the controversy; the appellant's brief, in no material respect dif-

ferently from the appellee's view of it, thus states that one question:

"The sole question involved is whether, as a matter of law, the 'air-conditioning equipment' is 'a substantial addition and improvement' to and part of the realty, and, therefore, the property of Appellant; or whether the 'air-conditioning equipment' is a 'fixture, which could be removed without doing substantial injury to the building' and personal property, and, therefore, the property of Levy Bros. If it is a part of the realty, the judgment should be affirmed, as the landlord pays the taxes on the realty. If it is personal property, the judgment should be reversed and rendered in favor of Appellant, for Levy Bros. pays the taxes on its personal property."

These matters of accord have simplified the task before this court, and in addition both parties have further aided in the solution of the controversy by also presenting able briefs and oral arguments.

■ It is determined that the trial court was correct, in the main, upon these considerations:

(1) The first or base lease between the parties, of May 19 of 1928, provided that the landlord (that is, the appellant, through its predecessor-in-interest) furnish and install "fixtures" in the demised premises according to specifications to be furnished by the tenant (that is, Levy Bros. Company), at a total cost, inclusive of the installation, of not exceeding $160,000, which sum was to be repaid the former by the latter at $10,000 per year; these "fixtures" were indisputably "trade fixtures", such as show and display cases, shelves, booths, etc.

When that lease was so made, the premises so demised already contained the electrical wiring and fixtures, together with both heating and plumbing systems.

Into such setting this specific declaration of what the minds of the contracting parties met upon was thus made, italics being added here: "* * * *all alterations, additions or improvements which may at any time be made in, to, or about the demised premises shall be and remain the property of the Landlord, and shall be surrendered with the demised premises as a part thereof, without waste or injury, at the termination of the term hereby granted,* except that the Tenant shall have the right, at the expiration of the term hereby granted, to remove from the demised premises all fixtures which may theretofore have been installed by the Tenant, or installed by the Landlord and paid for by the Tenant, which can be removed without substantial injury to the building."

That was just short of ten years before the parties, responding to the exigencies of new business requirements for such facilities, made their "air-conditioning" contract of March 13 of 1937. Such "air-conditioning" contract expressly provided that "all the terms and conditions of said original lease, not inconsistent herewith, shall in all things apply to the additional space hereby added thereunder", that is, all space required for the "air-conditioning system".

(2) Balancing the provisions of the two successive contracts against each other, it seems reasonably clear that the parties should be held to have mutually intended thereby these two things: (1) That all the "alterations, additions, or improvements", including the "air-conditioning equipment", should remain the property of the landlord and be surrendered to it upon termination of the lease; (2) that, in the correlative right of the tenant on such termination to remove all "fixtures," only trade or inherently like fixtures were so agreed to be removable; in other words, that they were thereby making a distinction between "alterations, additions, or improvements" and "all fixtures", meaning that the "air-conditioning system" was an addition or improvement, on a parity with the heating and plumbing systems, hence was to become the property of the landlord and not removable.

■ (3) That there exists in the same and similar business relationships such a distinction between "alterations, additions, or improvements", and "fixtures", is recognized quite generally by the authorities, especially those in Texas. Such "fixtures" as these parties thus appear to have mutually had in mind are classified in Texas as "trade fixtures", "agricultural fixtures", and fixtures established for ornament, convenience, or domestic use, hence are removable on termination of the lease, if that can be effected without substantial injury to the freehold; but this elaborate, intricate, heavy, and complicated labyrinth, entering so integrally into and forming a part of the necessary reconstruction of this building for modern uses generally, cannot be regarded as such a concomitant of the appellee's peculiar dry-goods and department-store business as to be removable with it, like its show-cases, shelves, etc., but is rather a structural and permanent adaptation of the building it-

self to the new demands of business construction generally.

(4) Indeed, while it is deemed unnecessary to further describe the magnitude, the ramifications, and the infiltration of the many portions of this extensive system into the first five floors of the building, including also the basement and the cooling-tower space upon the roof, connected by walls, girders, plastering, bolts, conduits, and bars throughout those ramifications, it becomes somewhat difficult to classify it as not having come within the recitation in the original lease contract, so re-affirmed in the "air-conditioning" contract itself, that "all improvements, alterations, and additions in, to, or upon the premises, remain the property of the landlord, to be surrendered with the demised premises at the termination of the lease."

(5) Further, the evidence shows the design of the elaborate system, for which a construction engineer was paid a large fee, was to so adapt it to the appellant's building as would improve it to the greatest extent, and thereby render its appointments suitable for competitive use as a mercantile establishment, along with other buildings generally, which were putting in such systems at that time. That its establishment did constitute a betterment, improvement, and valuable addition to the building itself for such purpose, is likewise established by the undisputed evidence. That such appliances, with such an objective, and entailing such results, should be construed as constituting improvements in the realty itself, or changes in the freehold, and therefore mean more than mere "fixtures", seems to have been quite generally held by our courts; 36 Corpus Juris 178, Landlord and Tenant, paragraph 829; Parker v. Wulstein, 48 N.J.Eq. 94, 21 A. 623; Realty Dock & Improvement Corp. v. Anderson, 174 Cal. 672, 164 P. 4; French v. Mayor, 29 Barb., N.Y., 363; Olympia Lodge v. Keller, 142 Wash. 93, 252 P. 121, 52 A.L.R. 795.

(6) In fact, our Texas cases, along with some others, take the view that the term "improvements" comprehends all additions to the freehold, except "trade fixtures" which can be removed without injury to the building. Smusch v. Kohn, 22 Misc. 344, 49 N.Y.S. 176; Sanders v. Lefkovitz, Tex.Civ.App., 292 S.W. 596, 597; Reader v. Christian, Tex.Civ.App., 234 S.W. 155; Parker v. Wulstein, supra; Northwestern, etc., Co. v. Parker, 125 Minn. 107, 145 N.W. 964; Stockwell v. Marks, 17 Me. 455, 35 Am.Dec. 266; Jacob v. Kellogg, 56 Misc. 661, 107 N.Y. S. 713; State ex rel. Leonard v. Commissioners of Crawford County, 17 Ohio Cir.Ct.R. 370, 9 O.C.D. 715.

(7) Neither in this connection is appellant's view, that under this contract only "substantial" alterations, additions, or improvements, were to become the property of the landlord, considered tenable; because, this provision of the lease itself seems to repel it: "The tenant shall not without the prior written consent of the landlord make any substantial alteration, addition or improvement in and to the demised premises, and *all* alterations, additions, or improvements * * * shall be and remain the property of the landlord."

Furthermore, since this system undisputedly cost about $85,000 and weighed several hundred thousand pounds, there can be no doubt as to whether or not it was a "substantial" addition to and improvement of the leased premises; wherefore, it seems clear that all alterations, or improvements, whether substantial or not, were intended to constitute and remain the property of the landlord.

The included provision on that feature, that the tenant should obtain the prior written consent of the landlord before making any substantial alterations or improvements, was not only a requirement in that respect, but, as the evidence without question shows, it was fully complied with by the appellee.

(8) That this comprehensive system did not, as the trial court found, come within the meaning given by these parties in their contracts to the term "fixtures", thus seems to this court to be reasonably clear; while that term has been given many "different and contradictory significations" (Hutchins v. Masterson & Street, 46 Tex. 551, 26 Am.Rep. 286), these users of it, as indicated, are thought to have plainly employed it in the sense of "trade fixtures", or "fixtures of convenience", which were removable without the consent of the landlord, whereas, on the other hand, the "alterations, additions, or improvements", were recognized by them as not belonging to those classes, but were considered as attaching to and improving the building itself, hence were not removable by the tenant without the landlord's

consent; 19 Tex.Jur. 728, Fixtures, par. 21; Bovet v. Holzgraft, 5 Tex.Civ.App. 141, 23 S.W. 1014; Moody & Jemison v. Aiken, 50 Tex. 65; Northwestern Lumber Co. v. Parker, supra.

(9) As mentioned above, courts quite generally, including ours in particular, have held that heating and other systems, which this court is unable to distinguish in essential nature and objective from an "air-conditioning" one, did not constitute such "trade" or "convenience fixtures," and are not removable by the tenant without the landlord's consent; Menger v. Ward, Tex.Civ.App., 28 S.W. 821; McOwen v. Zimmerman, Sup., 133 N.Y.S. 461; Levenson Wrecking Co. v. Hillebrand, 93 Misc. 530, 157 N.Y.S. 515; Jacob v. Kellogg, 56 Misc. 661, 107 N.Y.S. 713; 19 Tex.Jur. 730, "Fixtures", par. 22.

 (10) Appellant's contention that the agreement between these parties antedating the installation of the "air-conditioning system", referred to it as appellee's "air-conditioning machinery", show appellee to be claiming permanent ownership of it, are thought to be inept; this, for the reason that the later contract relating directly thereto of March 13 of 1937, as was recited above, brought forth and specifically applied all the provisions of the original lease to the "air-conditioning system", inclusive of the one to the effect that "all alterations, additions, or improvements, shall be and remain the property of the landlord."

(11) Just as in Armstrong v. Mission Independent School Dist., Tex.Civ.App., 195 S.W. 895, the court construed cited R.S. Article 7146 as requiring that improvements placed on a railroad right-of-way, which became realty, should be taxed as the property of the railroad, and not that of its lessee, who placed them on the land; so in this instance that statute should be given the same effect, since the trial court rightly held these air-conditioning improvements to have become part of this building.

(12) There can be no doubt here that the relationship set up between these participating parties by their contracts was that of both lessor and lessee and landlord and tenant; the contracts themselves so reflect upon the face thereof; for this reason, there was no licensor and licensee status between them, therefore appellant's suggestion that there was such

relationship, calling for the application of a different rule from that governing as between a landlord and a tenant, is deemed to be without merit.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.