W. D. CANTRELL et al., Appellants,

v.

W. J. BROADNAX, Appellee.

No. 15311.

Court of Civil Appeals of Texas.

Dallas.

Oct. 4, 1957.

Rehearing Denied Nov. 1, 1957.

Earl Luna, Stanford & Allen, Dallas, for appellants.

Johannes & Kelsoe, Dallas, for appellee.

YOUNG, Justice.

This controversy between the parties involves the ownership of a wooden structure after its removal to Lots 3, 4 and 5, Block A/6095, Honey Springs Addition to the City of Dallas, and placement upon temporary piling or underpinning. At close of testimony on trial to a jury the court ruled that no questions of fact had been raised, granting peremptory instructions as follows: In favor of Pate against Cantrell for $500; that the building was the property of Broadnax; and denying all other prayers for relief by way of cross-action, etc. To such rulings defendant Cantrell gave notice of appeal; plaintiff Pate excepting to the court action denying his plea against both Cantrell and Broadnax for exemplary damages. Facts material to the litigation must first be detailed in sequence.

On August 14, 1954 the Honey Springs Baptist Church through its trustees McClatchey, Johnson and Kerbow, executed a contract for purchase of said Lots 3, 4 and 5, Block A/6095, from owners Broadnax & Company (S. P. Martinez), consideration $2,600 to be paid as follows: "Cash * * * $30,00 Thirty. and no one hundreds as down payment. and 30,00 thirty, and no one hundreds. beginning on the 15th, September 1954. and on the same tate of each and every month thereafter until fully paid. at the rate of 6% per annum. payable on or before. failure to make a payment on due date, automaticaly cancel this contract, and the purchasers waive all claims and rights to said property and all the improvements thereon." Warranty deed was to be furnished upon payment in full of above

consideration. The named church was located on Shindoll Street, but in view of an increased membership, the Broadnax lots had been thus acquired; the trustees in the meanwhile planning to move the donated frame building in question onto the site for new church quarters, engaging defendant W. D. Cantrell for the job of moving.

On August 10, 1954 a written contract for moving the building was signed by Cantrell and Fred Chunn, Honey Springs Church pastor; consideration $1,100, of which $1,000 was to be paid when same was placed on Lot 4 of the Broadnax purchase, the balance when the structure was settled on a concrete foundation to be furnished by the trustees. The building was accordingly moved to its present site, but the church having failed to make the cash payment required, it was there left on temporary piling inclusive of Cantrell's equipment. The church being unable to pay for the job of moving, Cantrell later agreed to take the subject building in extinguishment of his debt; evidenced by the following memorandum in writing signed by the church trustees, also by its pastor J. D. Perry: "January 2, 1955. To Brother Dan Cantrell. Conference called at Honey Springs Baptist Church, 1906 Shindoll Street, Dallas, Texas to give Dan Cantrell permission to move building on Alsbury as payment for moving. By order of Church Clerk. Mrs. Edith Bandy."

Perforce of above quoted instrument Cantrell proceeded to dispose of the structure, selling it to plaintiff W. W. Pate on April 12, 1955 for $500 cash; the latter being in process of demolition when stopped by Broadnax under claim that aforesaid structure constituted "improvements" on the lots under the 1954 sales contract of the church, long since forfeited. Then arose these conflicting claims as reflected in pleading of the parties, in substance as follows:

Initiated by the petition of Pate, suing both Cantrell and Broadnax for a return of his $500; claiming against the former

that he, Cantrell, had fraudulently represented himself as owner of property that he had no right to sell, and further liable in amount of $500 as punitive damages; in the alternative praying similarly as against Broadnax. In amended answer Cantrell alleged ownership of the building through the quoted church letter of January 2, and hence a right to sell to Pate; alternatively for judgment over against Broadnax. In trial amendment Cantrell answered further as against Broadnax that the latter had willfully refused him permission to remove his cribbing and building equipment underneath the house, amounting to a conversion of his property of the reasonable value of $500; in second trial amendment alleging that Broadnax had himself waived any right to forfeit the sales contract of the church by continuing to attempt collection of delinquent monthly payments. The answer of Broadnax pled the terms of the 1954 sales contract, providing for monthly payments on the lots of $30, that the September 1954 installment was not paid; that the contract was thereby automatically canceled, the purchasers expressly waiving their claim and rights to the property "and all improvements thereon"; and further that the contract was executed with the understanding that the building would be placed on the property thus purchased as an improvement in lieu of a larger down payment.

The first of appellant Cantrell's five points is reflected in the foregoing outline of his pleading; in effect that the building was personal property, not having been affixed to the realty, which the church had turned over to him in extinguishment of the obligation incurred in moving of same; Broadnax having waived his right to cancel the sales contract by giving no notice of forfeiture but rather insisting on further payment of installments. Broadnax, on the other hand, insists that there was no evidence of probative force to raise the issue of waiver (if indeed such plea was available); the building in question constituting

an improvement which "automatically" accrued to him as vendor upon breach of the sales contract by the church.

It appears without dispute that the church trustees made only one $30 payment on these Lots; also that they had, by the written paper of January 2, 1955, sought to assign all right, title and interest in the building in discharge of their indebtedness to Cantrell. In this connection defendant Broadnax testified to the transaction of August 1954, concerning these lots, as follows: "The preacher come in there and wanted to buy the property; he said he didn't have much money but that the Cockrell Hill Baptist people were giving him a church and he was going to move a church on that property. I said, 'Well, all right, in a case like this, we want a hundred dollars down on the lot, but if you are going to move a church on there, we will let you go ahead at $30.00 and we take the church in as the down payment * * *' Q. Take what in as a down payment? A. * * * if they don't pay for it * *. Q. Take what in as a down payment? A. In other words, all the improvements on the property, if they didn't pay for it, would revert back to us." The testimony of Chunn, former church pastor, amounted to no more than a denial that he had received any notice from the vendors of any forfeiture of rights as against the vendees.

■ We conclude that the trial court correctly determined that the building in question became the property of defendant Broadnax under the clear wording of this mentioned contract, supplemented by testimony not materially in dispute. In the first place, it appears that the parties to such contract intended the structure to be moved onto the lots as an "improvement"; the term having a broader signifi-

cation than "fixture" and comprehending all additions and betterments to the freehold. "In fact, our Texas cases, along with some others, take the view that the term 'improvements' comprehends all additions to the freehold, except 'trade fixtures' which can be removed without injury to the building." Nine Hundred Main, Inc., v. City of Houston, Tex.Civ.App., 150 S.W.2d 468, 472. Also, on default in payments, by the terms of the contract same became automatically canceled, the . purchasers waiving "all claims and rights to said property and all the improvements thereon." "It has been held in many cases that parties to a contract may agree upon the remedies that shall accrue in case of its breach, and the contract involved in this case clearly provides that its breach by the appellant should result in the forfeiture by him of the improvements which he placed upon the land, together with the labor expended by him in grubbing the 54.6 acres and plowing that which was already in a state of cultivation. * * * It is true, as asserted by appellant, that the courts do not favor forfeiture but when the parties to a contract write into it the provision that in consequence of its breach a forfeiture shall result, the courts have no alternative but to enforce the contract as made by them." Grindstaff v. Mather, Tex.Civ.App., 186 S.W.2d 364, 367.

■ Appellant Cantrell argues that the issue of waiver is implicit in the testimony of Broadnax, in that his partner Martinez had told Chunn after default in the sales contract that "If you don't make your payments, we will have to take the property." The point is overruled, this defendant reiterating that no action was taken against the church and that "We stood strictly on our contract * * *."[1] Moreover, Cantrell was a stranger to the sales contract, and the question of whether its provisions

---

1. Upon the issue of waiver Broadnax testified:
 "Q. All right, have you to this date taken any action against anybody? A. No, sir.

"Q. With respect to that .property? A. I didn't take any action, period. I stood on the contract. * * *
 "The Court: All right. Now, then, how long had the building been on the

had been waived was a matter of defense to be raised by the church as a privy thereto, which it did not do. 17 C.J.S. Contracts, § 518, p. 1112. "The parties to a contract are the ones to complain of a breach thereof; and if they are satisfied with the disposition which has been made of it and of all claims under it, a third person has no right to insist that it has been broken." 12 Am.Jur. 819, notation citing Williams v. Eggleston, 170 U.S. 304, 18 S.Ct. 617, 42 L.Ed. 1047.

 Appellant in point 5 asserts that defendant Broadnax has at least converted his moving equipment, still located under the subject property; and that a fact issue results as to liability for its reasonable value. Admittedly, under the evidence, no demand was ever made for a return of the particular property; Broadnax in effect disclaiming any interest with respect thereto, stating that the owner was at liberty to remove his cribbing and timbers at any time. "It is a well-settled rule that one who is rightfully in possession of property, though the legal title thereto may be in another, is not guilty of conversion. Conversion is the unlawful and wrongful exercise of dominion, ownership, or control by one person over the property of another, to the exclusion of the exercise of the same rights by the owner." Zerr v. Howell, Tex.Civ. App., 88 S.W.2d 116, 118. The point is without merit.

Also overruled are points of appellant Pate to effect that he is entitled to punitive damages as against both Broadnax and Cantrell; and that the trial court erred in directing an adverse verdict in such regard. From the testimony of Cantrell it is certain that his sale to Pate was made under the honest belief of ownership and full right to make disposition of the structure as he did. "Punitive damages may not be awarded where it appears that the defendant acted in good faith or without wrongful intention, or in the belief that he was exercising his right. 13 Tex.Jur., p. 243, sec. 134." Upham Gas Co. v. Smith, Tex.Civ.App., 247 S.W.2d 133, 135. And that Broadnax was not activated by malice as against Pate is implicit in this judgment of affirmance.

Affirmed.

property, if you know, at the time Mr. Martinez notified them that he was going to exercise the privilege in the contract of repossessing the property as well as any improvements that might be on it? A. Somewheres about six or eight weeks after the note was executed. * * *

"The Court: Now, then, would you know or would Martinez know whether or not you notified these deacons, whoever they were, that you were going to exercise your privilege under the contract to repossess the property, was that prior..

to January 2, '55, or after? A. Oh, that was prior to that time. * * *

"The Court: In other words, it is your contention that you exercised your rights under the contract before he got the letter from the Deacons? A. That's right. * * *

"Q. Well, now, this lawsuit has been pending a long time; now, you have discussed this thoroughly with him, haven't you? A. Not very much; we stood strictly on our contract, is all."